State vs. Fontenot.

No. 11,932.

STATE OF LOUISIANA VS. EVARISTE BELAIRE FONTENOT.

The ruling of the trial judge in allowing certain questions to be answered which are objected to as leading will not be disturbed, unless it is shown that under the circumstances under which they were asked they were leading.

A witness, who is asked a single question, may be, on cross-examination, asked all such questions which are legitimately calculated to test his memory, accuracy and veracity, with reference to the single fact sworn to.

The recommendation of the jury who tried the case for a new trial is no legal reason why it should be granted.

APPEAL from the Eleventh Judicial District Court for the Parish of St. Landry.   *Perrault, J.*

*M. J. Cunningham*, Attorney General, and *E. B. DuBuisson*, District Attorney, for Plaintiff, Appellee.

*John N. Ogden*, for Defendant, Appellant.

Submitted on briefs January 11, 1896.

Opinion handed down January 20, 1896.

Rehearing refused February 10, 1896.

---

The opinion of the court was delivered by

MCENERY, J. The defendant was indicted for murder, and on his trial convicted of manslaughter and sentenced to two years at hard labor.

In the record there is a motion to quash the indictment. It does not appear to have been passed upon in the lower court. No mention is made of it in defendant's brief, and we presume it was abandoned.

Several rulings of the trial judge, on the introduction of evidence, were objected to and were incorporated in one bill by defendant. The District Attorney asked one of the witnesses the following questions: "Did you see the end of the blade?" ": Is that the blade that was pulled out?" "Did the blade break off when the blow was struck?" "Did you hear any noise when the blow was struck?" "Was there any part of the blade projecting from the head, and if so how much?" "Was it easy or hard to pull out the knife?"

The questions were objected to as being leading and suggesting the answer.

In his statement to the bill, the trial judge says it was necessary to answer such questions in order to arrive at the facts, the witness being asked such questions in order to be made to understand the matter inquired into. He further states that the defendant had admitted the killing by means of a knife blade being driven in the head of the deceased, stating, however, that he did so in self-defence.

We presume from the judge's statement that there was evidence as to the knife blade having been driven into the head of the deceased. It does not appear whether the witness on the stand had first made the statement, but the inference is, that he had testified to the fact, and these questions were to elicit mere matters of detail in reference thereto, and were essential, according to the judge's statement, to arrive at the facts. We see no objection to the questions. They were not leading, so as to suggest a fact to be established the first

State vs. Fontenot.

time, but of details of the inflicting of the wound, which had been proven. In such a case we find no objection to questions which do not suggest an answer to a material fact, but are asked in the way of explaining a fact not disputed, so as to arrive at a more correct understanding of the same. It would be in such a case carrying the well defined rule of excluding leading questions to an unreasonable degree. Under certain conditions the trial judge may permit leading questions to be put, and the ruling of the judge may have been under proper conditions. On this point we are not informed; 1 Greenleaf, Ex. Par. 434; 1 Starkie, 100.

It is difficult sometimes to determine what are and what are not leading questions. We do not think the questions propounded are leading questions. They can be answered directly with an affirmative or negative reply.

A witness was asked by the defendant one question—whether he had seen a brass knuckle in the hands of the deceased. It is alleged in the bill, that on cross-examination the prosecution was permitted to interrogate the witness on all the facts bearing on the case, but no particular questions are specified. The questions were permitted to be answered, the trial judge averring as a reason therefor "that the question referred to the time of the conflict between defendant and deceased. The litigated fact being whether the deceased at the time of and during the conflict was armed with a dangerous weapon, a brass knuckle. It was competent for the State by cross-examination to test the power of observation or of memory of the witness as to other things occurring at that particular time, or immediately before or after."

As stated, we are informed as to the line of interrogation by the bill, and we are therefore to conclude from the judge's statement, that the cross-examination was limited to the test of the witness' accuracy of statement.

In the motion for a new trial it is urged that the jury stated that they did not want to hear argument, and the defendant's counsel construed this to mean that the jury were satisfied of the innocence of the accused, and that as a consequence, counsel did not argue the case. That he was deceived by the request of the jury; otherwise he would have argued the case. This is certainly no ground for a new trial. The defendant must be bound by the conduct of his counsel, and if he believed matters were favorable to him from expres-

·sions of the jury, and was deceived thereby, it was his voluntary act in accepting such expressions, and no relief can be afforded the defendant. As an additional reason it is urged that six jurors who tried the case signed the following statement: "We, the undersigned jurors, having rendered a verdict in the above case, and knowing that we are liable to err as any one else might do, hereby agree that the accused may be granted a new trial." Nothing that the jury may say or do after the verdict is rendered legally can influence a new trial. The judge's statement is of more force, and he distinctly announces that the verdict was correct.

Judgment affirmed.