PRO VO STY, J.
The three defendants were tried on a charge of murder, and found guilty of manslaughter, and sentenced to four years at hard labor.
Bill of Exception No. 1.
A witness for the state proving to be an unwilling witness, not telling all he knew, the district attorney was permitted, over the objection of defendant, to put to him the following question:
“State whether or not you told me on March 3, 1906, in my office, that when you went into the house to look for Lee Sandford’s body, that you struck one match, looked upon the beds, and told defendants that he was not in there. To which they replied; ‘Oh! yes; he is. Look again.’ ”
To which question defendants objected, “for the reason that it is hearsay, leading, and the state cannot be permitted to impeach her own witness.”
This bill is without merit. The question was as to something the witness himself had said, and therefore was not hearsay; and leading questions are legitimate when the witness is unwilling. So far as its impeaching the witness is concerned, we fail to see wherein it had that effect.
In argument the learned counsel for defendants say that the object of the question was to lead the jury to believe that the witness had made the statement, and thereby to get the statement before the jury in this indirect and improper manner, and that this was the real ground of the objection. If so, this “real ground” should have been expressed, and an opportunity afforded the district attorney to explain, and the judge to rule. This court, as a matter of course, can con- *1089 aider only the objections that are stated in the bill.
Bills Nos. 2 and 3.
For the purpose of impeaching their credibility, the defendants, who appeared as witnesses in their own behalf, were asked, on cross-examination, whether they had ever been prosecuted before and for what offenses. This was objected to, on the ground that it was an attempt to impeach the character of the defendants, although it had not been put at issue.
This objection is without merit. It is well settled in our jurisprudence that, when a defendant offers himself as a witness, he may be asked, on cross-examination, whether he has not been prosecuted before for other offenses. State v. Murphy, 45 La. Ann. 958, 13 South. 229; State v. Southern, 48 La. Ann. 628, 19 South. 668; State v. Walsh, 44 La. Ann. 1122, 11 South. 811; State v. Taylor, 45 La. Ann. 605, 12 South. 927; State v. Alexis, 45 La. Ann. 973, 13 South. 394; State v. Favre, 51 La. Ann. 434, 25 South. 93; State v. Robinson, 52 La. Ann. 541, 27 South. 129.
The cases cited by defendants’ learned counsel are not in point. State v. Jackson, 44 La. Ann. 160, 10 South. 600, has no application whatever. What was there held was that, when witnesses are called to impeach the character of a witness, their testimony must be confined to the general character of the witness, and cannot be extended to particular acts.
State v. Underwood, 44 La. Ann. 852, 11 South. 277, and State v. Kennon, 45 La. Ann. 1194, 14 South. 187, have a closer bearing, but still are not exactly in point. They do not purport to maintain a different doctrine from that of the Murphy, Southern, and other cases, cited supra. Their doctrine is that the defendant cannot be cross-examined as to matters not testified to by him in chief. They do not say that a defendant who, by offering himself as a witness, represents himself as a credible and reliable witness, may not be cross-examined for the purpose of testing the representation thus made.
Bill No. 4.
The accused killed the deceased by shooting at him through the walls of a house. Their defense was that they were on his bond in a criminal case and were trying to arrest him, as they had a right to do, and that he was resisting. The prosecution, for the purpose of discrediting this defense, offered to prove that on the night of the killing one of the defendants had sent for whisky. Objection was made, on the ground “that it was irrelevant, not connected with the transaction, near a mile from the scene of the trouble, and out of the presence of the other defendants.”
Under the circumstances, we do not think the evidence was necessarily irrelevant. It might have tended to discredit the defense set up by defendants. We have not before us a sufficiently complete statement of the facts to enable us to judge of that. The fact that all the defendants were not present when the witness was asked to go for the whisky is immaterial, in view of the fact that the killing was the joint act of the defendants, and that, in consequence, they must be held as solidary in their conduct on the occasion in question, and the act of one as the act of all. It is elementary that the acts and declarations of one of the participants in a crime are admissible against his associates, when forming part of the res gestae. 12 Oyc. 437.
Bill No. 5.
This bill involves the same principle as Bill No. 1.
Bill No. 6.
The defendants moved for a new trial on the ground that after the trial one of the jurors had stated that at the time of his being taken as a juror he had a fixed opinion as to the guilt of the defendants.
*1091 If the juror had embodied the same statement in a formal affidavit, or had offered to make the statement under oath in open court, such affidavit, or statement in open court, would have been inadmissible in evidence. 12 Cyc. 749, citing State v. Corcoran, 50 La. Ann. 453, 23 South. 511; State v. Richmond, 42 La. Ann. 299, 7 South. 459; State v. Bird, 38 La. Ann. 497. A fortiori, then, is such statement not admissible in evidence when sought to be proved by the affidavit of bystanders who pretend to have heard it? ,
If jurors could vitiate their verdict by simply going about and making statements about their mental condition while sitting as jurors, or, worse still, if verdicts could be vitiated by simply offering testimony as to what one or more jurors had said after the verdict had been rendered, there would be little stability in verdicts.
Judgment affirmed.