PROVOSTY, J.
The two appellants in this ease; Carlo Accardo and Giadana Cuizirma, were jointly indicted for breaking and entering a box car in the nighttime with intent to steal, which is an offense denounced by Act 47, p. 40, of 1890; and for stealing from said box car goods of a value exceeding $100, or, for grand larceny. They were tried and found guilty, and sentenced to 12 years in the penitentiary.
[1] They moved to quash the indictment on the ground that it did not set forth whether the Texas & Pacific Railroad Company, the alleged owner of the box car in question, was a corporation.
The court overruled the motion. The learned counsel for the accused admits that it is based on the barest technical; ty; and he does not suggest how the accused could have been injured by the ruling complained of, even if erroneous. In this part of the country, the fact that the Texas & Pacific Railroad Company is a legal entity, capable of owning property, is so well known that the failure to allege it in an indictment, cannot by any possibility mislead an accused or hamper him in his defense. The error, therefore, is not reversible.
[2] The two appellants were indicted as principals. They requested the judge to charge that an accessory before, the fact cannot be convicted on an indictment charging him as a principal, and the judge refused to give the charge.
Most of the states have passed statutes abolishing the common-law distinction between principals and accessories before the fact, and allowing accessories to be indicted as principals. 22 Cyc. 361. But no statute of that kind has been adopted in this state. On the contrary, by statutory provision, “the forms of indictment and all other proceedings whatsoever in the prosecution of crimes” must be “according to the common law, unless otherwise provided.” Rev. St. § 976.
“One indicted as principal cannot be convicted as accessory before the fact. He must be indicted as an accessory.” 1 Ency. of Pl. & Prac., 68.
“An accessory cannot be convicted on an indictment charging him as principal.” Wharton’s Criminal Law (7th Ed.) par. 143.
Section 972, Revised Statutes, provides that the punishment of accessories before the fact shall be the same as that of principals, and section 105S allows the accessory to be tried irrespective of whether the principal has been, or is being, brought to justice or not, and we have considered whether the effect of those statutes was not to abolish the common-law distinction between accessories before the fact and principals.
We cannot avoid the conclusion that, if the intention had been to abolish said distinction, the Legislature would have said so expressly, as was done in the other states which have abolished said distinction, and we find that whenever the courts have had occasion to consider whether statutes similar to the above had the said effect, the conclusion was reached that the said distinction *669 was not abolished. People v. Campbell, 40 Cal. 129; Williams v. State, 41 Ark. 173. We must therefore hold that the learned trial judge should have given the said instructions, and his failure to do so is reversible error, since the facts necessary to be stated in the indictment in the one case are not the same as in the other, and therefore the accused has an interest in having the distinction observed; although the criminality in the two cases is the same, and, therefore, from that standpoint, the distinction is one without a difference. State v. Poynier, 36 La. Ann. 572.
[3] Next, the accused complains of the following statement made by the district attorney in his closing argument:
“Now, gentlemen of the jury, counsel says you must not convict these men because the district attorney says he wants you to convict them. It does strike me, gentlemen of the jury, that it is an absurd statement. I certainly don’t think that you are going to convict these men because I want you to convict them. I believe you are going to convict these men, gentlemen of the jury, because the sworn testimony in this case makes it your solemn duty to convict them. The idea of my opinion prevailing in this matter when you have as your guide your oath, your intelligence and your conscience, gentlemen of the jury, is absurd. I don’t want any man convicted unless the evidence satisfied me that he is guilty. I don’t have to try him unless I am satisfied he is guilty. When I examine into the facts of the case, and I am not satisfied from the evidence that the man is guilty, I don’t have to try him. I only try cases, gentlemen of the jury, and it is only proper for me to try cases when I am satisfied from the evidence that the accused is guilty.”
The learned district attorney has here practically advised the jury that he has made a separate and independent investigation of the case in his official capacity, and found the accused guilty. Upon what evidence this ex parte investigation of the case was based, whether upon the same evidence as that produced before the jury, or also upon other evidence not produced, or, perhaps, not admissible, before the jury, the learned district attorney does not say. Manifestly, he could not have been allowed to go upon the witness stand and throw into the scale against the accused the fact of his having made this investigation and reached the said conclusion of guilt — his own sense of justice would revolt at such a proceeding; and yet what practical difference is there between his testifying to such an investigation and of its result as a witness on the stand, and his bringing it to the attention of the jury by an unsworn statement made to them in his official capacity; especially in the impressive manner adopted in this case — driving the fact home to the breasts of the jurors by an elaborate protestation of impartiality and disinterestedness. The warning to the jurors not to regard, or be influenced by, the fact of such ex parte impartial investigation having been made, and having resulted in the conviction of the accused, very far from curing the situation, aggravates it, as being calculated to throw the jurors off their guard and expose them to be all the more easily influenced. If the learned district attorney did not expect this statement to be regarded and to influence the jury, why did he make it?
In the case of State v. Clayton, 113 La. 782, 37 South. 754, this court said:
“The remarks of the district attorney in his argument to the jury were very improper. We have sought upon a number of occasions to impress upon district attorneys the fact that in attempting to bring to bear upon the jury the weight of their individual personal belief and opinion as to the guilt or innocence of accused parties they were acting outside of, beyond and contrary to their duty, and that in so doing they were also seriously jeopardizing the interests of the state.”
The verdict must, on this ground also, be set aside.
[4] The accused also took exception to the following statement of the district attorney in his closing argument:
“The evidence shows that Zumma is the leader in this movement; that he is the brains of that entire confederacy, and that he made these two men tools to steal; but the proper place for them is in the penitentiary with Zumma, *671 because if you separate them from Zumma, you are going to break the chain.
“Now, gentlemen of the jury, what part does our friend the storekeeper play in this transaction? Gentlemen of the jury, the man on this end (Zumma) is the brains of that entire confederacy. He is the man who sits at the switchboard, the man on this end, Zumma. I cannot but feel sorry for Accardo; he is a fool. And the man in the middle (Palermo) has less sense than Accardo. But I think fools like that ought to be retired from circulation and they ought to be in the penitentiary.”
These are mere argumentative statements; mere inferences, more or less justified by the facts proved.
[5] It is next complained of that the district attorney in his cross-examination of one of the accused as a witness upon the stand transgressed the limits of legitimate cross-examination; and did so for the purpose of prejudicing the cause of the accused. The following is the cross-examination in question:
“Q. Ain’t it a fact that they ran you out of Baton Kouge?
“A. No, sir.
“Q. Is it not a fact you had to leave Baton Rouge?
“A. No, sir.
“Q. It is not?
“A. No, sir.
“Q. You are positive of that?
“A. Yes, sir.
“Q. You left there of your own accord, did you ?
“A. Yes, sir.
“Q. Is it not a fact that you bought $175 worth of groceries from Smith Bros., while you were at Burtville?
“A. No, sir.
“Q. You say you never bought $175. worth of goods from Smith Bros, while you were at Burtville?
“A. No, sir.
“Q. Is it not a fact that when you left Burt-ville, or shortly before you left Burtville, this $175 worth of goods which you bought from Smith Bros, you had a negro to cart it away to another Dago’s store to get it away from the store so that you could beat Smith Bros, out of those goods?
“A. I don’t know anything about that.
“Q. Is it not a fact that Mr. Carville, a lawyer here in Plaquemine, had that claim from Smith Bros, against you for that $175?
“A. Not as I know of.
“Q. Now, I want to place you on your guard. Think well. I ask you is it not a fact that you bought those goods from Smith Bros, in New Orleans, never paid for them, and that the bill was placed in the hands of Mr. Car-ville for collection against you?
“A. No, sir.”
We find no transgression here. The questions are legitimate, and must be assumed to have been propounded in good faith.
The judgment and verdict are set aside, and the case is remanded for trial according to law.
The CHIEF JUSTICE and LAND, J., concur.