(63 South. 174.)

No. 19,905.

STATE v. MANUEL.

(June 30, 1913.)

*(Syllabus by the Court.)*

1. JURY (§ 72*)—TALESMEN—SUMMONING.

In a murder case the judge, in anticipation of the exhaustion of the regular venire, may order the summoning of tales jurors to complete the panel. Verbal instructions of the judge to the sheriff, before the entry of the order, to summon the jurors from a part of the parish where English was spoken and understood, furnished no just cause for quashing the list of talesmen, where it appeared that they were summoned after the entry of the order on the minutes, and that the judge and sheriff acted in good faith for the sole purpose of expediting the trial of the case, and no wrong was done to accused.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 333–347; Dec. Dig. § 72.*]

2. JURY (§ 33*)—QUALIFICATIONS.

The accused has no legal right to be tried by jurors from a particular portion of the parish, or by jurors speaking his own tongue.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 226–232; Dec. Dig. § 33.*]

3. WITNESSES (§ 337*)—CROSS-EXAMINATION—CREDIBILITY.

On cross-examination the accused, like any other witness, may be questioned as to commission of other offenses, whether felonies or misdemeanors, for the purpose of impeaching his credibility as a witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1113, 1129–1132, 1140–1142, 1146–1148; Dec. Dig. § 337.*]

Appeal from Sixteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Armel Manuel was convicted of manslaughter, and appeals. Affirmed.

E. B. Dubuisson, of Opelousas, and J. H. Dore, of Ville Platte, for appellant. R. G. Pleasant, Atty. Gen., and R. Lee Garland, Dist. Atty., of Opelousas (G. A. Gondran, of Donaldsonville, of counsel), for the State.

LAND, J. The accused, indicted for murder, was found guilty of manslaughter, and was sentenced to imprisonment at hard labor for 10 years.

The accused has appealed, and relies for reversal on two bills of exception, which will be considered in the order in which they were reserved.

Bill No. 1 was taken to the refusal of the judge to sustain a motion to set aside the venire of talesmen on the following grounds, to wit:

(1) Because the names of the talesmen were selected by the sheriff and a deputy sent to summon them prior to the time when the regular venire was exhausted, and prior to the time the judge ordered a venire of 15 or 20 men to be summoned by the sheriff.

(2) Because said talesman do not speak French, and were all summoned by the sheriff from the northern portion of the parish which is an English-speaking community, whereas the defendant is a French-speaking Creole, and the homicide with which he stands charged took place at Anse aux Pailles, a neighborhood almost entirely inhabited by French-speaking Creoles.

After hearing the evidence, the judge overruled the motion for the following reasons:

"Feeling confident that the regular panel would be exhausted, and in order to save time and delay, I ordered the sheriff to summon 15 jurors, to serve as necessity might require. I instructed him to select these tales jurors remote from the scene of the crime; he did so."

[1] It appears that before the court convened the judge instructed the sheriff to select 10 or 15 tales jurors, and that officer sent out a deputy with instructions to pick out good, reliable citizens in the Chicot neighborhood, where nearly all the residents spoke English. In the vicinity of the place of the homicide, about two-thirds of the people spoke French. The judge instructed the sheriff to get talesmen who could talk English well enough to understand the charge of the court and the arguments of the lawyers. The sheriff did not select the talesmen in advance; but his instructions to his deputy were to select good and honest men. As

soon as the court convened, about 10 a. m. of the same day, an order was made and entered on the minutes for the summoning of 15 talesmen, and the regular venire was exhausted about 1 p. m., when the court took a recess. When the court reconvened about 4 p. m., the sheriff presented a list of 5 talesmen, who had been summoned by his deputies. One of these talesmen was accepted by both sides, and later other talesmen appeared, and the jury was completed by the selection of four of them.

Section 11 of Act 135 of 1898, as far as necessary to quote, reads as follows:

"But nothing herein contained shall be so construed as to limit the right of the judge in criminal cases, after the list of jurors or talesmen drawn by the commission is exhausted, after the trial has commenced, to order the summoning of talesmen from among the bystanders or persons in proximity to the courthouse, or from any portion of the parish, remote from the scene of the crime, which the judge may designate."

In State v. Moncla, 39 La. Ann. 868, 2 South. 814, it was held that the judge, in anticipation of the exhaustion of the regular jury panel, may direct the sheriff to summon tales jurors.

In State v. Watkins, 106 La. 384, 31 South. 12, the court said:

"We do not give to the eleventh section of Act No. 135 of 1898 the strict construction which appellants wish to have placed upon it, and to make the exercise of the right of the judge to order talesmen to be summoned by the sheriff in a criminal case conditioned absolutely upon the prior exhaustion of the list of regular jurors or talesmen drawn by the jury commission. The trial of criminal cases would be greatly hampered if each case had to be forcedly postponed until the jury commissions could be called together to fill up an incomplete jury. We think the court may, in anticipation of the exhaustion of the regular panel, direct the sheriff to summon talesmen. That course was held authorized in State v. Moncla, 39 La. Ann. 868 [2 South. 814], and we do not think the legal situation has been changed by the act of 1898. After defendants' counsel had concurred, as the court states they did, in the propriety and advisibility of the course followed they were scarcely in position to subsequently complain of it."

The last is an additional reason that does not detract from the force of the clear expression of opinion, that the judge may order the sheriff to summon talesman in anticipation of the exhaustion of the regular panel.

Section 15 of Act 135 of 1898 provides that a venire of jurors shall not be set aside because of any defect or irregularity in the manner of selecting the jury, if it shall not appear that some fraud has been practiced or some great wrong committed in the selection and summoning of the jury that would work irreparable injury. This provision applies with greater force to the informal summoning of talesmen to complete the panel. Tales jurors are selected by the sheriff, and by him verbally notified to attend the court for service in a particular case.

[2] In the case at bar, the talesmen were not summoned or notified until after the order of the judge had been spread upon the minutes. All of the talesmen summoned were competent jurors. The place of their residence in the parish was immaterial. The sheriff had a reasonable discretion as to the place from which he summoned the talesmen, and, if he acted in good faith, the exercise of such discretion is not ground for setting aside the verdict. State v. Bouvy, 124 La. 1054, 50 South. 849. As to the objection that tales jurors were not summoned from French Creole neighborhoods, the reply is that there is—

"no law which confers on the accused the right to be tried by his friends and acquaintances, or by jurors from a particular portion of the parish, or by jurors of the same race." State v. Laborde, 120 La. 136, 45 South. 38.

The record shows that only seven jurors were secured from the regular venire. The calling in of tales jurors was imperative. The objection that the court's order was made at 10 a. m. instead of 1 p. m. is purely technical, and was properly overruled in

the absence of a showing of prejudice to the accused.

Bills Nos. 2 and 4 are abandoned by counsel for the accused.

Bill No. 3 was taken to the overruling of the objection of the accused to certain questions propounded to him on cross-examination, as follows, to wit:

"Q. Are you the Armel Manuel who was convicted last year for cutting the fence of Mr. Homer Manuel, and served a term in jail here for it? A. Yes; I am the Armel Manuel. Q. The same one? A. Yes."

As to this bill, we make the following extracts from the brief of counsel for the accused, to wit:

"These questions were objected to by counsel for defendant on the following grounds: First, because defendant has not placed his character at issue; second, because the evidence is inadmissible as cross-examination, for the reason that the witness was not questioned relative to the matter in his examination in chief; third, because the evidence is not admissible for the purpose of impeaching the witness for truth and veracity, for the reason that the conviction inquired about is not one involving moral turpitude, and such as would discredit the witness for truth and veracity; and, fourth, because the judgment and sentence are the best evidence of the facts sought to be proved."

In support of the third objection, counsel for the accused cites 40 Cyc. p. 2607 et seq. as follows:

"The fact that a witness has been convicted of crime may be brought out as bearing on his credibility, where the crime amounts to a felony or is infamous in its nature, and involves moral turpitude, but is usually held that a witness is not to be discredited by showing his conviction of a mere misdemeanor or minor offense not involving moral turpitude or infamous in its nature."

The editor of Cyc. cites a few cases to the contrary. As far as we are advised, the distinction between a felony and a misdemeanor in cross-examination of witnesses has not been recognized in this state. In the case of State v. Quinn, 131 La. 490, 59 South. 913, we held that the accused might on cross-examination be questioned as to his conviction and imprisonment in jail for the offense of selling intoxicating liquors without a license, which is a misdemeanor. In State v. Accardo, 129 La. 666, 56 South. 631, it was held that an accused may be asked on cross-examination, if he was not "run out" of a certain city, and if he did not buy certain goods and dispose of them without paying therefor. In State v. Casey, 110 La. 712, 34 South. 746, the cross-question was:

"How many times have you been in trouble?"

And it was held admissible.

In State v. Southern, 48 La. Ann. 628, 19 South. 668, the cross-question was:

"Are you charged with another offense at this time, and are there any other bills pending against you?"

And the court said:

"The question was a proper inquiry to affect the credibility of the witness."

In State v. Barrett, 117 La. 1089, 42 South. 514, the court said:

"It is well settled in our jurisprudence that, when a defendant offers himself as a witness, he may be asked on cross-examination whether he has not been prosecuted before for other offenses."

In the discussion of the question under consideration, this court has never differentiated between felonies and misdemeanors, and in the very latest case held that the accused may be cross-examined as to the commission of the latter kind of offenses.

We see no prejudicial errors in the record before us, and conclude that the verdict and sentence should be affirmed.

Judgment affirmed.