MONROE, O. J.
Defendants, having been convicted of murder and sentenced to be hanged, present their case to this court upon two bills of exception, as follows:
[1, 3] Bill 1 was reserved to the overruling of a motion for continuance, filed on April 18, 1919, in which it is alleged that they had been unable to secure counsel to represent them until they were appointed by the court, and thereafter had been incarcerated outside of the city of Monroe, and were unable to confer with the counsel so appointed “until this date,” and that the counsel affirm that they have not had time to prepare the case or confer with the witnesses.
The statement per curiam, attached to the bill,, is to the effect that defendants were arraigned on April 15, and informed the court that they were arranging to employ counsel; that counsel were appointed to represent them in the arraignment, one of whom (McHenry) subsequently represented Eaton on the trial; that on the day the case was first scheduled for trial it developed that defendants had been unable to satisfy the counsel with whom they were negotiating, and the court formally appointed counsel for each of them; that Mr. Layton, the counsel (other than Mr. McHenry) who was so appointed to represent Flournoy, was associated with the firm with whom defendants had been negotiating though, up to the time of his appointment, he had had no personal knowledge of the case; that, when the motion for continuance was overruled, most, if not all, of the witnesses for the state were present, and were instructed to remain and give the counsel for defendants all the information they had about the case, which was reassigned for the following day; that the counsel then went into consultation with the witnesses, as suggested by the court and that nothing further was said, upon the next day, about the continuance.
The question of granting or refusing the continuances was one the determination of which was largely within the discretion of the trial judge, and we find nothing to indicate an abuse of that discretion. State v. Murray, 136 La. 255, 66 South. 963; State v. Jack, 139 La. 885, 72 South. 429.
[2] Bill 2 was reserved to the overruling of a motion for new trial, based upon the allegations that the verdict was contrary to law and th'e evidence, and that the jury was partial and prejudiced; the basis of that charge being the allegation that, though one of the jurors had qualified on his voir dire, by answering that he had neither formed nor expressed an opinion as to the guilt or innocence of defendants, and that, if accepted, he could give them a fair and impartial trial, counsel for defendants learned, after the conviction, that he had previously stated to one Hendricks “that he would probably be on the jury the next day to try the negroes charged with killing Charles McQuiller, and that he was going home to get some sleep”; further, “that there was not a chance for the negroes, and he was glad he was on the jury.”
On the hearing of the motion, however, Hendricks denied that he had made the statement thus attributed to him, and denied that he had heard the juror make the statement which he (Hendricks) was thus alleged to have heard. He said that he had heard the venireman say that he would “possibly,” be on the jury the next day, but without mentioning any particular case, and that he was going home to get some sleep, and that, aft *585 er the conviction, he had heard him say, "that they convicted the negroes and that there was not a chance to get around the conviction.”
We find nothing in the reading of the testimony to justify the belief that it was untrue. The witness further says that, in signing the affidavit upon which the motion was based, after the conviction, he got “balled up,” and did not know what he was saying, and we conclude that he misunderstood the questions propounded to him, or that his answers were misunderstood.
Judgment affirmed.
Having been the presiding judge in the lower court, DAWKINS, J., takes no part.