OVERTON, J.
 

 Defendant and John Picou were indicted for stealing, on April 28, 1928, four head of cattle, the property of Browder & Browder. Defendant was tried alone, found guilty, and sentenced to the penitentiary. His appeal presents a number of bills of exception for consideration.
 

 The first bill presented is one taken to the • overruling of a motion for a continuance. It appears that the bill of indictment was returned on May 7, 1928; that defendant received notice of the return on the following day; that he was arraigned on May 11, 1928; and that, on the same day, his case was fixed for trial for May 17, 1928. The grounds for the continuance, briefly stated, are that, by reason of the physical indisposition of his counsel and the shortness of time intervening between the return of the indictment and the day of trial, he and the counsel, which it was necessary for him to employ, have not had sufficient time to search for and interview witnesses and to prepare an adequate defense; that, if given sufficient time, he will be able to prove that Browder & Browder did not own at any time the cattle he is charged with having stolen; that A. Browder, the prosecuting witness, habitually brands cattle belonging to others, and asserts ownership of cattle not belonging to him; that neither the prosecuting witness nor the alleged owners had any title or right to the cattle in question ; that said cattle have for some time been his property, and were unlawfully branded by Browder & Browder after he had aqquired them ; that Picou, with whom he was jointly indicted, is an important witness in the latter’s defense; that he caused a subpoena to issue for Picou, whose whereabouts is unknown to him; that he has used due diligence to secure the attendance of said witness and obtain information from other witnesses, whose names are unknown to him, of the facts above set forth, but without avail; and that there are other material witnesses, residing- in the adjoining parish of Tensas, but that, he has not had time to procure their names, nor to confer with them or to procure' their attendance at the trial, although he has used due diligence.
 

 The lower court overruled this motion, because it felt that sufficient time had elapsed for the preparation of the case, and because the witness, John Picou, whose presence was desired by defendant, and who was jointly indicted with him, was a fugitive from justice, and therefore Picou’s presence could not be reasonably counted upon, if a continuance were granted, and because the remaining wit
 
 *102
 
 nesses referred to in the motion were unnamed, and because no affidavit was submitted as to what could be established by them.
 

 It is well settled, that, whether a continuance should be granted in a given case, rests largely within the sound discretion of the trial court, and that its ruling should not be reversed unless it appears that there has been clear abuse of the discretion vested in it. State v. Eaton, 144 La. 582, 80 So. 884; State v. Reyon, 151 La. 333, 91 So. 755; Marr’s Crim. Juris. (2d Ed.) § 509, p. 787. It does not appear whether only one of defendant’s counsel was indisposed or whether both were. We take it, however, that the trial judge thought that the indisposition was not such as to prevent the preparation of the case, or had the effect of doing so. It does) not appear that the defendant himself could not have obtained, within the time allotted him, the names of his witnesses and knowledge of what their evidence would be if summoned. As to the witness John Picou, there was no reasonable probability of obtaining his presence, if a continuance had been granted, because he was a fugitive from justice. In these circumstances we are not prepared to say that the lower court erred in overruling the motion. «
 

 The second bill of exceptions was taken to the sustaining of an objection, urged by the state, on the ground of irrelevancy, to the following question, propounded by defendant’s counsel to Monzell, one of the state’s witnesses, to wit:
 

 “Isn’t it a fact that on the levee about a week ago, in discussing this case with Tom Barnes, you remarked to Tom Barnes that you did not understand why Mr. Browder was making so much fuss over this matter, as he was branding every body’s cattle?”
 

 The bill recites, and it is urged, that the question was asked for the purpose of impeaching the credibility of the witness Mon.zell. There could be nothing in the answer that the question could elicit that would affect the credibility of the witness. The only purpose that could have been entertained, in asking the question, was to impeach the witness, in the event he should deny, having made the statement. A witness cannot be impeached on matters irrelevant to the issue, elicited on cross-examination for the purpose of impeaching him. Marr’s Crim. Juris. (2d Ed.) § 640, p. 980. The answer sought to be elicited was irrelevant. The ruling is corrept.
 

 The third bill of exception shows that the witness Monzell was asked by the state what he was doing on the Sunday morning when he went to the cattlepen where he testified that he met defendant. The state, after receiving the answer that he was looking for his cattle, immediately asked the witness, whether he found his cattle there, which question was answered by the witness in the affirmative. Before the question was answered, the defendant objected to it on the grounds that the evidence was not admissible under the indictment, that it was irrelevant, and that the corpus delicti had not been established. These objections were overruled.
 

 We think it was permissible for the state to show what the witness found in the pen. It was upon this occasion, as appears from the note of evidence in the record, that the cattle of Browder & Browder, alleged to have been stolen by defendant, were found by the witness in the pen with his cattle. It is true that the evidence had a tendency to show the commission of another crime, but it showed a fact, which was, at least, closely connected with the res geste, and which had 'a tendency to show that the cattle, alleged to have been stolen, were not erroneously taken. We think, under these circumstances, the evidence was admissible. State v. Hammons, 137 La. 854, 69 So. 277. The objection that the corpus delicti had not been proven was without merit.
 

 
 *104
 
 The fourth bill of exception was taken to the overruling of an objection, urged by defendant, to the following question propounded toy the state, on redirect examination, to the witness Monzell, to wit:
 

 “Did you not testify that Mr. Dundas (defendant) when you first met him, or when you first saw him, at that time, and on that occasion, was coming in the direction of the gate from the swinging door?”
 

 The witness answered the question in the affirmative, but, prior to his answer, the defendant objected to the question on the ground that it was leading and was suggestive of an answer that was in no way connected with the offense charged.
 

 As appears from .the stenographic notes in the record, the witness had testified to the same effect just before the cross-examination began. Having testified to that effect, it was not improper for the state, in ascertaining whether he had so testified, to put the question in leading form. See State v. Fontenot, 48 La. Ann. 220, 19 So. 112. Not only was the evidence received without objection in the first instance, but we think that it was admissible as tending to show the conduct of defendant in the pen.
 

 The fifth bill of exception was taken to the overruling of an objection to the following question propounded by the state to the witness George Metz, to wit:
 

 “Did ^ou and Jeff Williams and Mr. Monzell get any other cattle out of Mr. Dundas’ (defendant’s) pen at that time and on that occasion?”
 

 Defendant objected to the question on the ground of irrelevancy. After the objection w’as overruled, the witness answered that they did. The evidence elicited is the same in effect as that considered in passing on bill No. 3. For the reasons there given we think the bill is not well founded. '
 

 The sixth bill of exceptions was reserved to the overruling of objections, urged to the following questions, propounded by the state to the witness Sullivan Hunter, to wit: “Did you make any protest to John Picou about the driving of any of the cattle he was driving along there?” to which question the witness answered, “Tes.” The state then propounded the following question to the witness, to wit: “What protest did you make?” The witness answered the question as follows: “Well there were some cattle there at the time; two of them belonged to Mr. Dunbar Ellis, and I told him not to drive those cows off and he got mad with me.” Before these questions were answered, the defendant objected to each of them substantially upon the grounds that they were irrelevant, self-serving, and seek to elicit evidence showing an incident that occurred out of the presence ■of defendant.
 

 The foregoing protest was made, as we appreciate the facts, while Picou was driving the cattle, including those alleged to have been stolen here, to defendant’s pen. After the protest was made, although Picou grew angry, he separated the two Ellis cows from the others and ceased driving them.
 

 The objection that the evidence was self-serving is without merit. As to the other objections, the bill of indictment charges both Picou and defendant jointly with having stolen the cattle, alleged to have been stolen in this case. As the larceny is charged as being their joint act, the indictment charges a conspiracy. State v. Ford, 37 La. Ann. 443, 459, State v. Gebbia, 121 La. 1083, 1104, 47 So. 32. The acts and declarations of one conspirator within the scope of the conspiracy and in furtherance thereof is admissible against all coconspirators, and the trial judge need not pass upon the question of conspiracy in the first instance, but may receive the evidence of the acts and declarations of the alleged conspirators, leaving it to the jury to give effect to them against all engaged in the conspiracy in the event the jury should
 
 *106
 
 find the conspiracy established. Marr’s Crim. Juris. (2d Ed.) § 552, p. 847. The actions and conduct of Pieou, in attempting to reach the pen safely with the cattle, were acts in furtherance of the conspiracy, and as such were admissible against defendant, under the rule above stated. The statements, made by the witness, were explanatory of those acts and that conduct, and as such were admissible.
 

 The seventh bill of exceptions was taken to the overruling of objections urged to the following question propounded by the state to the witness Sullivan Hunter, to wit:
 

 “Did you testify when you let the 'cattle go down the road that Pieou told you he was going to let Mr. Henry (referring to defendant) come get them?”
 

 The witness answered that he had. Before the question was answered, defendant objected to it upon the ground that the question was leading and calls for a statement made out of his presence and seeks to elicit evidence that is hearsay. In overruling the objection, the trial judge stated that the question had been propounded and answered at a time when there was no objection to it.
 

 The bill, as to the form of the question, should be overruled for the reasons assigned in passing on bill No. 4, where a similar point was considered. As to the remaining objections, we think they were correctly overruled for the reasons assigned in passing on bill No. 6, for the declaration of Pieou appears to have been one in furtherance of the alleged conspiracy to enable him to reach the pen with the cattle.
 

 The eighth bill of exception was reserved to the sustaining of an objection to a question propounded by defendant to the witness Ed Hunter. The question was as follows: “D'o you know whether or not Mr. Dundas (defendant) bought cattle from Calvin Bass?” The objection urged by the state and sustained by the court was to the 'form of the question, and because the question calls for hearsay evidence.
 

 The question is not objectionable as to its form. It is not leading. Nor is the remaining objection well founded, for the question does not call for hearsay. The state concedes as much before this court, but urges, among other things, that the stenographer accidentally omitted from the question that part of it which made it objectionable. The stenographer may have made such., an error. However, in the absence of proof, we cannot hold that he did. As it is, we must follow the record, as presented to us, and, so ■following it, must hold that the objections urged are not well founded. But should we for that reason set the verdict aside? (The question upon its face appears to be merely introductory to something else. Whether or not the witness knew that defendant had purchased cattle from Bass, of and by itself, was a matter of no importance. It seems to us that, before error which may be said to be prejudicial resulted from the ruling, defendant should have proceeded further with the examination. We are abundantly satisfied that, if defendant had attempted to show that the cattle which he is charged with having stolen were purchased by him from Bass, the court would have permitted him to make the proof, and, if it had not, defendant would have had good ground for a reversal. Nor does it follow that, because the bill recites that the purpose of the question was to bring out the fact that the cattle, which the accused is charged with having stolen, were purchased by him from Bass, the court by its ruling indicated that it would not have permitted defendant to make the proof. At the time the question was asked and the ruling was made, the purpose of the question was not declared, as appears from the stenographic notes. As it is, so far as relates to this bill, defendant comes before us, relying for a reversal upon an error based upon a ruling to a mere intro
 
 *108
 
 ductory question. In our view the bill does not disclose reversible error.
 

 The ninth bill of exception was reserved to the sustaining of objections urged to the following question propounded by defendant to the witness, Jesse Hunter, to wit:
 

 “At the time you were talking to Mr. Browder and trying to get your father’s heifer state whether or not there were any' other people there and what was said by Mr. Browder?”
 

 The objections urged by the state to this question were that it-calls for hearsay evidence, that it seeks to elicit something that is res inter alios acta, and that the evidence sought to be elicited isi irrelevant. The bill reeiteá that, when the question was propounded to Hunter, A. Browder, the chief prosecuting witness, had testified that he had not branded a heifer belonging to Ed Hunter; that he had not attempted to brand it; that he was not prevented from branding it by Jesse Hunter; and that the question propounded to Jessei Hunter was asked for the purpose of affecting Browder’s credibility.
 

 As to whether Browder had branded Hunter’s heifer, or had attempted to brand it, but was prevented from doing so, was a matter irrelevant to the issue in the case. We infer that Browder’s denial was elicited on cross-' examination. While a witness on cross-examination may be interrogated on matters irrelevant to the issue, for the purpose of affecting Ms credibility, yet the party interrogating him is ordinarily bound by the answers obtained, and therefore cannot contradict those answers by other witnesses. 40 Cyc. pp. 2569, 2627. Therefore, there was no error in excluding the evidence.
 

 Bills of exceptions 10 and 11 may be considered together. They relate to questions propunded to the accused, while a witness in his own behalf, for the purpose of affecting his credibility. These questions were: “Have you ever been arrested before for stealing?” The answer to which was, “Yes.” “You were tried and found not guilty, were you not?” The answer to the question was, “Yes.” “Were you ever convicted on any charge in this court at a jury trial?”- The answer to this was, “I don’t know about that.” “You don’t know that you were tried on a criminal charge in this court and found guilty by a jury?” This question the accused answered, “Yes.” “Was not that charge for concubinage?” This the witness answered, .“I think so.” Each of these questions was objected to by defendant as the state propounded i,t. The ground of the objections was that the evidence was irrelevant, the character of the accused not being at issue.
 

 When a witness is called to the stand and testifies in the case, it is proper for the party not calling Mm to inquire into his credibility. Such was the purpose of the evidence elicited here. Its purpose was not to affect the character of the accused, as an accused, but his credibility as a witness. The real question at issue is whether or not the state, in its cross-examination, exceeded the proper bounds of inqmry. In State v. Barrett, 117 La. 1086, 42 So. 513, it was said, quoting the syllabus, which correctly reflects the views expressed in the opinion, that:
 

 “The court should not, for the purpose of' ‘discrediting’ a defendant, then a witness on the stand, permit him to be questioned as to whether he had ever been ‘arrested’ for, or ‘indicted’ for, crimes. The question should, at furthest, be asked as to Ms ‘conviction.’ ”
 

 In that case, however, the question was not brought before the court in such form that the court could give the views expressed by it effect, and tjherefore, notwithstanding those views, the court felt called upon to affirm the verdict and the sentence appealed from. The views there expressed may therefore be regarded as obiter.
 

 But whether the foregoing views, expressed in State v. Barrett, be regarded as obiter or
 
 *109
 
 not, this court has not since followed them. Thus, in State v. Hughes, 141 La. 578, 75 Soj 416, in which the accused, as a witness in his own hehalf, was asked “if he had not been accused of stealing many times before,” it was said:
 

 “it has been held that, when a defendant offers himself as a witness, he may be asked on cross-examination whether he has not been prosecuted before for other offenses. State v. Barrett, 117 La. 1089, 42 So. 513. See, also, State v. Waldron, 128 La. 559, 54 So. 1009, 34 L. R. A. (N. S.) 809; also State v. Quinn, 131 La. 490, 59 So. 913. * * *”
 

 In State v. Foster, 153 La. 154, 95 So. 53®, where the defendant had been cross-examined, as a witness in his own behalf, as to various charges of which he had been convicted, it was said:
 

 “Defendant may be questioned on cross-examination, like any other witness, as to the commission of other offenses whether felonies or misdemeanors, for the purpose of impeaching his credibility.
 

 “Defendant may be asked if he has ever been arrested, or if he is charged with another offense at this time, and if other bills are pending against him. State v. Joseph, 137 La. 53, 68 So. 211; State v. Manuel, 133 La. 571, 63 So. 174; State v. Southern, 48 La. Ann. 628, 19 So. 668; State v. Accardo, 129 La. 666, 56 So. 631; State v. Quinn, 131 La. 490, 59 So. 913; State v. Waldron, 128 La. 559, 54 So. 1009, 34 L. R. A. (N. S.) 809; State v. Barnes, 136 La. 512, 67 So. 349; State v. Posey, 137 La. 871, 69 So. 494; State v. Hughes, 141 La. 578, 75 So. 416; State v. Werner et al., 144 La. 380, 80 So. 596, 6 A. L. R. 1601.”
 

 In State v. Toliver, 163 La. 1000, 113 So. 222, the defendant, while testifying in his own behalf, was asked on cross-examination how many times he had been arrested or charged with the violation of the laws of the city and state, and during the cross-examination answers were elicited showing that the defendant had been arrested a number of times for various minor infractions of the law. The court, in passing upon the bill reserved to the ruling of the trial judge admitting this evidence, said:
 

 “A defendant in a criminal prosecution cannot be compelled to become a witness, unless he so desires. , Act No. 157 of 1916, p. 379. But, if he elects to do so, the general rule, is that he is subject to cross-examination and impeachment the same as any other witness, due regard being had to his constitutional rights not expressly waived by him. * * *”
 

 “The cases are numerous in our jurisprudence holding that a defendant in a criminal prosecution, who takes the stand in his own behalf, may be asked on cross-examination for the purpose of impeaching his credibility, if he has ever been arrested or prosecuted for the commission of other offenses, whether felonies or misdemeanors. State v. Brown, 154 La. 11, 97 So. 265; State v. Foster, 153 La. 154, 95 So. 536, and the cases therein cited.”
 

 The cases of State v. Compagno, 125 La. 669, 51 So. 681, State v. Nejin, 140 La. 793, 805, 74 So. 103, and State v. Daniel, 141 La. 423, 75 So. 102, cited by defendant, are not per-, tinent to the question here presented. They relate to an entirely different question, namely, to the necessity of alleging that one charged with crime is a second or third offender before evidence is admissible to show that he is. Nor is Act 74 of 1914 pertinent. That act relates to the suspension of sentence.
 

 Our conclusion is that the evidence objected to by defendant was properly admitted.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., dissents from the rulings on bills 5, 6, 8, 10, and 11.