326 So.2d 848 (1975)
STATE of Louisiana
v.
Thomas CARTER, Jr.
No. 56594.
Supreme Court of Louisiana.
December 8, 1975.
Dissenting Opinion December 23, 1975.
Rehearing Denied February 20, 1976.
*849 R. Judge Eames, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, James E. Boren, Asst. Dist. Attys., for plaintiff-appellee.
DIXON, Justice.
Thomas Carter, Jr., was charged with armed robbery (R.S. 14:64) and tried jointly with Mac Brown. The bill of information had originally charged Mac Brown and Ralph Sterling with the robbery; the name of Sterling was later struck out and Carter's name was added (Sterling's whereabouts at the time of the trial were apparently unknown). The jury found the defendants guilty. Appellant Brown's sentence was deferred for five years, and he was remanded to the parish prison.
Assignments of Errors Nos. 3, 4, 5, 6, 22 and 27 were argued together by defendant. All involve the application of the conspiracy statutes (R.S. 14:26 and R.S. 15:455).
*850 Over defendant's objections, the prosecutor was allowed to argue the law concerning conspiracy to the jury in the opening statement and in the closing statement, and the trial judge instructed the jury on the law of conspiracy.
The substance of the prosecution's evidence was as follows:
Diane L. Johnson testified that she was the owner of a 1973 two-door, gold Toyota stationwagon. On the morning of November 5, 1973 Ralph Sterling asked to borrow Miss Johnson's automobile. She loaded her laundry in it at her home and picked up Ralph Sterling a few blocks away. Sterling drove to the laundry, picked up Mac Brown and dropped Miss Johnson off at the laundry at Nicholson Drive and West McKinley at about 10:45 a.m. Sterling was to have returned to pick up Diane at 12:00 o'clock, but, when he arrived at 12:15, accompanied by Brown and the defendant Carter, she was not quite ready. At her request, Sterling and the other two men went to a restaurant and returned with a hamburger for Diane, having taken fifteen or twenty minutes for the errand. They then helped Diane load the clothes, took her home, and left in her automobile. Diane did not thereafter see Mac Brown or the defendant, but within ten or fifteen minutes Sterling returned and requested Diane to take him to the unemployment office for a 1:00 or 1:30 p.m. appointment. Enroute, they were arrested and a gun was found in the car pocketa gun about which Diane testified she knew nothing. She never saw Ralph Sterling again.
The victim of the robbery was Mary Ann Armstrong, who was employed in her husband's grocery at 2755 69th Avenue. She testified that after 12:00 o'clock, probably while the noon news was on television, two women and a child and two black men were in the store. When the women and child left, the two men, armed with guns, robbed her. She identified Mac Brown as the taller of the two, who were in the store, she said, approximately five minutes. Although the taller one held a bandanna to his face, she got a better look at him than at the shorter one. Mrs. Armstrong was told to lie on the floor. She did, and "a minute or two" later the "cookie man," Mr. Lambert, came in. When Mrs. Armstrong told Lambert about the robbery, he went outside and notified Mr. Armstrong, who called the police. The police arrived ten or fifteen minutes later.
On July 8, 1974 the defendant Carter was included in one of three line-ups viewed by Mrs. Armstrong. She identified another person, not charged, as one of the robbers. She failed to identify Carter. At the trial Mrs. Armstrong stated that the defendant Carter did not look like the second man in the robbery.
A. M. Lambert, the cookie distributor, testified he arrived at the store around 1:00 p.m., on his regular route. He did not know the time but was on schedule. Mrs. Armstrong jumped up when Lambert entered the store and told him she had been robbed. Lambert had seen no one leave the store, but had seen a "little light colored foreign car pull off and turn to the left at the corner . . . about a block and a half or 160 yards away." Lambert could not tell the number of occupants in the vehicle.
E. L. Pritchard, a deputy sheriff, was transporting a prisoner on November 5, 1973 and between 11:00 and 12:00 o'clock (or perhaps between 10:30 and 12:30), heard a police radio bulletin about an armed robbery in Scotlandville. The bulletin identified the car used in the robbery as a light colored foreign stationwagon. About five minutes or so after hearing the bulletin, while Pritchard was on I10, he noticed an orange colored Toyota stationwagon pass his vehicle. Pritchard then radioed the license number to headquarters. He observed that the vehicle was occupied by three black males.
*851 Gregory Nettles, who was fifteen years old at the time, noticed on November 5, 1973 two black men either coming from the Armstrong store or going toward it. He described them as being dressed "in a green coat" and testified that he saw a little gold colored stationwagon parked around the corner from the store.
Deputy Knight received a call at 12:20 concerning the robbery, and arrived at the store at 12:30. Deputy Lee was already at the store. Knight obtained a description of the car from Mrs. Armstrong (who had not seen the car but who had talked to Lambert). Police headquarters was already broadcasting a bulletin about the robbery and the involvement of a light colored foreign stationwagon before Knight obtained the description of the automobile from Mrs. Armstrong. Knight later learned that Deputy Littlefield had apprehended the automobile identified on the Interstate by Deputy Pritchard. The record does not disclose why Carter became a suspect, but it does disclose that Knight attempted to intercept Carter at Carter's sister's house on the evening of the robbery, though Carter did not come in.
Deputy Littlefield testified that he arrested Sterling and Diane Johnson in the original Toyota stationwagon at approximately 1:30 p.m. on November 5, and recovered a revolver from the glove compartment.
Rosa Carter Lunkin, the defendant's sister, had lived with her mother, her two daughters and the defendant for about one year. The defendant did not return to the house on November 5. The witness was unaware of the defendant's intention to absent himself. His personal belongings remained at the house. Carter telephoned her once or twice but the witness testified she did not know where the calls came from.
The prosecution relied strongly upon the statutory effect given to acts or declarations of a conspirator, arguing, in effect, that the law attributes to one conspirator responsibility for the conduct and the acts of the other conspirators "even if they weren't present." The trial judge, in his instruction, read to the jury R.S. 15:455:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
Defendant complains that there was no evidence of conspiracythat, in fact, the only evidence to connect him with the offense was that he was in an automobile at about the time of the robbery, several miles from the scene, which was occupied by one person identified later as a robber and by another person subsequently arrested in the car, which had a gun in the glove compartment.
The prosecution, on the other hand, argues that State v. Skinner, 251 La. 300, 204 So.2d 370 (1967), required that the jury be instructed on the law of conspiracy for the sole reason that the crime charged had been committed by two or more persons. (The State's brief argues extensively from the original opinion in State v. Kaufman, 278 So.2d 86 (La.1973). That opinion was reversed on rehearing, with a caveat at the conclusion concerning reliance on State v. Skinner, supra, "without necessarily establishing a prima facie case of conspiracy as required by La.R.S. 15:455." State v. Kaufman, La., 278 So.2d 86, 99).
It is true, as stated in Skinner, that the existence of a conspiracy is a jury question. But the effect of conspiratorial acts and statements is never properly before the jury unless the trial court is *852 satisfied that a prima facie showing of conspiracy has been made. The Skinner opinion did not hold otherwise. It cited with approval the statement that, "While it is error to submit the question of conspiracy if there is no evidence thereof, where there is evidence that the defendants had entered into a conspiracy to commit the crime alleged, an instruction on the law of conspiracy is proper, . . ." (204 So.2d 370, 393).
Skinner was criticized in 29 La.L.Rev. 299, 307:
"For the purposes stated above, it would appear that a conspiracy charge will be appropriate in some cases where several defendants are jointly tried for the basic offense, but have not been charged with the separate crime of criminal conspiracy. However, the Skinner opinion should be construed with care and not unduly extended. There are some unduly broad dicta statements in the various opinions of the Supreme Court Justices, such as Justice Hawthorne's statement that `it was the duty of the court to charge the jury fully as to the law of conspiracy in this case, as the defendant is jointly charged with murder, and the indictment necessarily involves conspiracy.' Similarly, Justice Hamlin broadly states, in his majority opinion on a rehearing, `it has been held under the jurisprudence of this court that: where an indictment charges that the crime was committed by two or more persons, such an indictment necessarily involves a conspiracy,' and concurring Justice McCaleb declares that it `is well settled that the judge is obliged to give a charge on conspiracy in prosecutions for a crime committed by two or more persons.' These statements, when read in the light of the facts of Skinner and the opinion as a whole, assume much less sweeping proportions.
"Actually, trial judges would be wise to be more specific and not phrase their conspiracy instructions in the broad fashion that was employed by the trial judge in Skinner. In general, it would be much clearer to phrase instructions in terms of the principal article of the Criminal Code, and when the special evidence rule is to be invoked the instruction should follow the pattern of that rule. In any event, the instruction should make it clear that the defendants were not being charged with the separate crime of criminal conspiracy."
R.S. 15:455 is express in making a prima facie showing essential to its applicability; in its final sentence the legislature made its intentions clear: "But to have this effect a prima facie case of conspiracy must have been established."
Where the State seeks to introduce evidence of the acts or declarations of one coconspirator against another, the existence of a conspiracy between them is a mixed question of law and fact. The trial court must determine whether a prima facie showing has been made in order to determine whether a defendant will be charged with responsibility for the acts and declarations of another. After such initial determination, the existence of the conspiracy becomes a question of fact for the jury. The two functions are not to be confused.
Where the United States Supreme Court has discussed the issue of the admissibility of declarations by one coconspirator against others, it has held that such are admissible notwithstanding the hearsay objection if the trial judge finds that there is substantial, independent evidence of the conspiracy.
In Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941), the Supreme Court stated the issue as follows:
"Glasser contends that such statements constituted inadmissible hearsay as to him . . . The Government attacks this argument as unsound, and, relying on the doctrine that the declarations of one conspirator in furtherance of the objects *853 of the conspiracy made to a third party are admissible against his co-conspirators, Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429, contends that the declarations of Kretske were admissible against Glasser . . ." 315 U.S. 60, 73, 74, 62 S.Ct. 457, 467.
And the court held:
". . . However, such declarations are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is proof aliunde that he is connected with the conspiracy. Minner v. United States (CCA 10th) 57 F.2d 506; and see Nudd v. Burrows, 91 U.S. 426, 23 L.Ed. 286. Otherwise hearsay would lift itself by its own boot straps to the level of competent evidence." 315 U.S. 60, 74-75, 62 S.Ct. 457, 467. (Emphasis added).
In Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), a majority of the United States Supreme Court reversed defendant's conviction, which had resulted from his fourth trial on a charge of violation of the Mann Act, by holding that statements made after the completion of the conspiracy did not come within the coconspirator exception to the hearsay exclusionary rule. In his concurring opinion, Justice Jackson issued what has come to be known as the Krulewitch warning.[1] In this opinion, in which Justices Frankfurter and Murphy joined, Justice Jackson cited the resounding implications of the charge of conspiracy:
"The crime comes down to us wrapped in vague but unpleasant connotations. It sounds historical undertones of treachery, secret plotting and violence on a scale that menaces social stability and the security of the state itself. `Privy conspiracy' ranks with sedition and rebellion in the Litany's prayer for deliverance. Conspiratorial movements do indeed lie back of the political assassination, the coup d'etat, the putsch, the revolution, and seizures of power in modern times, as they have in all history." 336 U.S. 440, 448, 69 S.Ct. 716, 720.
He recognized the difficulty experienced by the jury in cases involving conspiracy:
"When the trial starts, the accused feels the full impact of the conspiracy strategy. Strictly, the prosecution should first establish prima facie the conspiracy and identify the conspirators, after which evidence of acts and declarations of each in the course of its execution are admissible against all. But the order of proof of so sprawling a charge is difficult for a judge to control. As a practical matter, the accused often is confronted with a hodgepodge of acts and statements by others which he may never have authorized or intended or even known about, but which help to persuade the jury of existence of the conspiracy itself. In other words, a conspiracy often is proved by evidence that is admissible only upon assumption that conspiracy existed. . . ." 336 U.S. 440, 453, 69 S.Ct. 716, 723.
Justice Jackson further noted the precarious position occupied by the defendant charged with conspiracy:
"A co-defendant in a conspiracy trial occupies an uneasy seat. There generally will be evidence of wrongdoing by somebody. It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together. If he is silent, he is taken to admit it and if, as often happens, co-defendants can be prodded into accusing or contradicting each other, they convict each other. There are many practical difficulties in defending against a charge of conspiracy which I will not enumerate." 336 U.S. 440, 454, 69 S.Ct. 716, 723.
*854 In United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), a unanimous opinion with one justice not participating, the Supreme Court discussed the admissibility of statements by one coconspirator against others:
". . . The hearsay rule does not automatically bar all out-of-court statements by a defendant in a criminal case. Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, by independent evidence,14 of a conspiracy among one or

14 `As a preliminary matter, there must be substantial, independent evidence of the conspiracy, at least enough to take the question to the jury. United States v. Vaught, 485 F.2d 320, 323 (CA 4 1973); United States v. Hoffa, 349 F.2d 20, 41-42 (CA 6 1965), aff'd on other grounds, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. Santos, 385 F.2d 43, 45 (CA 7 1967), cert. denied, 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1148 (1968); United States v. Morton, 483 F.2d 573, 576 (CA 8 1973); United States v. Spanos, 462 F.2d 1012, 1014 (CA 9 1972); Carbo v. United States, 314 F.2d 718, 737 (CA 9 1963), cert. denied, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964). Whether the standard has been satisfied is a question of admissibility of evidence to be decided by the trial judge." 94 S.Ct. 3090, 3104. (Emphasis added).
more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy. . . .
These formulations, though written in terms of evidentiary rules, acquire basic constitutional overtones when the effect is considered of a rule which would make acts or declarations admissible against a defendant who had nether committed nor authorized them.
In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court held that the Confrontation Clause of the Constitution of the United States and the exclusionary rules of hearsay are not co-extensive. However, the court was express in holding that there is an area of overlap:
"Given the similarity of the values protected, however, the modification of a State's hearsay rules to create new exceptions for the admission of evidence against a defendant, will often raise questions of compatibility with the defendant's constitutional right to confrontation. Such questions require attention to the reasons for, and the basic scope of, the protections offered by the Confrontation Clause." 90 S.Ct. 1930, 1934.
Because of the salutary mandate of R.S. 15:455, we are not compelled to decide whether the rule requiring a prima facie showing of conspiracy prerequisite to admitting evidence of the acts or declarations of one coconspirator against another is a constitutional requirement. Since there was no evidence of a conspiracy, the trial court erred in ruling that the determination whether there was a conspiracy between defendants Brown and Carter was a question solely for the jury.
State v. Cryer, 262 La. 575, 263 So.2d 895 (1972), involved the admissibility of testimony by an officer that one jointly charged but not on trial told the officer he obtained the contraband from the defendants. State v. Skinner, supra, was cited for the proposition that the existence of a conspiracy is a question of fact for the jury.
We hold that when the only showing of a conspiracy is that two people committed a crime, and there is no showing that defendant either committed or conspired to commit the criminal act, no prima facie case of conspiracy has been established. We further hold that the fact, alone, that two or more have committed the crime charged is not sufficient to establish a prima facie case of conspiracy.
The conviction and sentence are reversed, and the case is remanded to the district court for a new trial.
*855 SANDERS, C.J., dissents and will assign written reasons.
SUMMERS, J., dissents.
MARCUS, J., dissents.
BOLIN, J., concurs. There was no evidence of conspiracy.
SANDERS, Chief Justice (dissenting).
Thomas Carter, Jr. and Mac Brown were jointly charged and tried for armed robbery. The trial judge instructed the jury as to the law of conspiracy. See LSA-R.S. 15:455. The majority[1] now reverses the conviction of Carter, because it finds insufficient evidence of conspiracy.
The holding is as follows:
"We hold that when the only showing of a conspiracy is that two people committed a crime, and there is no showing that defendant either committed or conspired to commit the criminal act, no prima facie case of conspiracy has been established. We further hold that the fact, alone, that two or more have committed the crime charged is not sufficient to establish a prima facie case of conspiracy."
The holding is contrary to the holdings of this Court in State v. Dundas, 168 La. 95, 121 So. 586 (1929); State v. Cryer, 262 La. 575, 263 So.2d 895 (1972); and State v. Brown, La., 326 So.2d 839 involving the co-defendant, handed down on December 8, 1975.
In State v. Cryer, supra, this Court held:
"The defendants assert that the statute provides that the State must prove a prima facie case of conspiracy before any statement or act of a co-conspirator can be introduced in evidence. They further contend that the trial judge erred in admitting the evidence of Falcon's acts and declarations before the State had established a prima facie case of conspiracy.
"We do not so construe the statute. The statute deals with the effect of the acts and declarations of one conspirator on the other conspirators. It does not purport to regulate the order of proof.
"The question of whether a conspiracy has been established is one of fact for the jury. State v. Skinner, 251 La. 300, 204 So.2d 370 (1967). The jury determines the existence of the conspiracy and the weight to be given the acts and declarations of the parties during the course of the conspiracy.
"The order of proof of the conspiracy, the acts, and declarations rest within the sound discretion of the trial judge. When two or more defendants are charged with the same crime, the trial judge may receive evidence of acts and declarations of one of them before the evidence of a conspiracy has been offered. See State v. Courtney, 170 La. 314, 127 So. 735 (1930); State v. Dundas, 168 La. 95 121 So. 586 (1929); State v. Fernandez, 157 La. 149, 102 So. 186 (1924); State v. Lebleu, 137 La. 1007, 69 So. 808 (1915); State v. Gebbia, 121 La. 1083, 47 So. 32 (1908); State v. Bolden, 109 La. 484, 33 So. 571 (1903)."
In State v. Dundas, supra, this Court stated:
"[T]he bill of indictment charges both Picou and defendant jointly with having stolen the cattle, alleged to have been stolen in this case. As the larceny is charged as being their joint act, the indictment charges a conspiracy. State v. Ford, 37 La.Ann. 443, 459; State v. Gebbia, 121 La. 1083, 1104, 47 So. 32. The acts and declarations of one conspirator within the scope of the conspiracy and in furtherance thereof is admissible *856 against all coconspirators, and the trial judge need not pass upon the question of conspiracy in the first instance, but may receive the evidence of the acts and declarations of the alleged conspirators, leaving it to the jury to give effect to them against all engaged in the conspiracy in the event the jury should find the conspiracy established. Marr's Crim. Juris. (2d Ed.) § 552, p. 847."
In State v. Brown, supra, we held:
"Therefore, we hold that if any evidence of conspiracy has been introduced during trial, the district attorney may refer to, and the court may charge the jury, as to the law of conspiracy. Because we find there was circumstantial evidence of a conspiracy in this case, we hold that the comments during argument and the trial court's charge were proper."
The holding of these cases is that if there is any evidence of conspiracy, circumstantial or direct, an instruction as to conspiracy is proper so that the jury can determine whether the acts and declarations of each conspirator can be charged against all defendants under LSA-R.S. 15:455.
The crime in the present case was the armed robbery of a small grocery store. Two men, both armed, entered the store. Three were observed in the get-away car. Carter was identified as one of the three in the car shortly after the robbery.
Quite clearly, there is a circumstantial evidence that the three acted jointly in the furtherance of a "common enterprise." It is difficult to conceive how three persons could have decided spontaneously to rob a store and executed the robbery in the manner shown here without: prior consultation. In any event, in my opinion, the existence of a conspiracy was a question of fact for the jury.
For the reasons assigned, I respectfully dissent.
NOTES
[1] See A. Goldstein, The Krulewitch Warning: Guilt by Association, 54 Geo.L.J. 133 (1965); Derby & Orfield, Cases on Criminal Law and Procedure, 64 (1950).
[1] There is no majority opinion. Three members of the Court subscribe to a plurality opinion and one concurs.