326 So.2d 839 (1975)
STATE of Louisiana
v.
Mac BROWN.
No. 56690.
Supreme Court of Louisiana.
December 8, 1975.
Dissenting Opinion February 23, 1976.
Rehearing Denied February 20, 1976.
*841 Neil H. Mixon, Jr., McCollister, Belcher, McCleary & Fazio, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph L. Roy, James E. Boren, Asst. Dist. Attys., for plaintiff-appellee.
BOLIN, Justice.
Defendant was charged by bill of information with armed robbery, in violation of La.R.S. 14:64. He was convicted and sentenced to ten years' imprisonment. He assigns seventeen errors on this appeal and we affirm.
The evidence adduced at trial indicated that on November 5, 1973, defendant and Ralph Sterling approached Sterling's girlfriend, the State's chief witness in the case, and asked to borrow her car. She agreed to lend the men her car provided they first drop her off at a laundromat. They left her at the laundromat sometime between 9:30 A.M. and 10:45 A.M. and returned at about 12:15 P.M. with a third person, identified by Sterling's girlfriend as Thomas Carter.
Sometime between approximately 12:00 noon and 1:00 P.M., the robbery in question occurred. One witness testified that a small, light colored foreign car was seen near the scene of the crime at about the time of the robbery. Two officers travelling on the Interstate with a prisoner in the back of their car saw three black men whom they could not identify, riding on that highway and noted their license plate number after hearing a radio notification to be on the lookout for a light colored foreign car. The car seen by the officers on the Interstate was the gold Toyota station wagon loaned by Ralph Sterling's girlfriend to Sterling and defendant. When Carter, Sterling and defendant returned to the laundromat, they picked up Sterling's girlfriend and let her out at her home. Sterling returned to his girlfriend's house ten minutes later without defendant or Carter. Sterling and his girlfriend then left her home and were driving the car toward an employment office when they were stopped by police who recognized the license number.
The officers then searched the car, with the owner's permission, and discovered a gun in the glove compartment, about which *842 the owner of the car testified that she knew nothing. $137.00 in small bills was also found on Sterling's person.

ASSIGNMENT OF ERROR NO. 1
Defendant first assigns error in the trial court's refusal to grant his motion to quash because defendant had been denied a speedy trial. The robbery allegedly occurred on November 5, 1973; defendant was arrested on November 8, 1973, and trial was held on January 28, 29 and 30, 1975. Under the four-factor test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we find defendant has not been denied his right to a speedy trial.
As to the first two factors, the length of the delay and the reasons therefor, the fourteen-month lapse between arrest and trial was neither inordinate nor unusual. The State demonstrated that the crowded docket accounted for the delay and we find that the trial judge did not abuse his discretion in accepting this explanation.
The third Barker factor is defendant's assertion of his right to a speedy trial. The defendant did not demand that he be tried until October 24, 1974, at which time he wrote a letter to the assistant district attorney. The trial was held three months after that time, and, considering the intervening Thanksgiving and Christmas holidays, this was not an unnecessary delay.
Finally, defendant has failed to meet the fourth factor set out in Barker since he failed to prove concrete prejudice flowing from the delay.
Thus, this assignment has no merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment, defendant argues that the trial court committed error by refusing to grant his motion for a severance of his trial from that of his codefendant Carter. A severance is required only when the trial court is satisfied that justice requires it. La.C.Cr.P. art. 704.
At the time the motion for severance was denied, there was no potential danger of inconsistent or antagonistic defenses or statements by the co-defendants or of the existence of any other factor which would prevent defendant from receiving a fair trial absent a severance. Nor did any such difficulty materialize during trial. Thus, we find this assignment has no merit.

ASSIGNMENTS OF ERROR NOS. 3, 4, 12 and 14
Assignments of Error Nos. 3, 4, 12 and 14 involve the issue of when the rules on criminal conspiracy may be mentioned in a trial not for the inchoate offense of conspiracy but for the commission of a substantive crime. The four assignments were made, (1) when the trial court explained the law of criminal conspiracy to the jury during voir dire examination; (2) when the assistant district attorney explained the law of criminal conspiracy during his opening statement; (3) when he again made such reference during his closing statement; and (4) when the judge explained to the jury the law of conspiracy during his charge.
In both its original and supplementary briefs and on oral argument, the State justifies references to the law of conspiracy on the basis that La.R.S. 15:455 allows proof by the State of a conspiracy in order to take advantage of the relaxed evidence rules established by that provision. La.R.S. 15:455 provides:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant.

*843 But to have this effect a prima facie case of conspiracy must have been established."
The State urges that the jury must understand the principles of the law of conspiracy because it must decide as a question of fact whether there has been a conspiracy in order to determine whether the acts of one co-conspirator are to be imputed to the other co-conspirators.
The scope of the voir dire examination of prospective jurors is within the discretion of the trial judge and his rulings will not be disturbed absent manifest error. La.C.Cr.P. art. 786. In order for evidence to be introduced at trial, it must be within the scope of the opening statement. La.C.Cr.P. art. 769. Thus, we hold that whenever more than one person is charged with the commision of a crime and the State intends to prove that a conspiracy existed in order to take advantage of La.R.S. 15:455, it is proper to discuss on voir dire and during the State's opening statement the law of conspiracy.
One of the subjects allowed by La.C.Cr.P. art. 774 to be discussed in the closing argument is the law applicable to the case. Likewise, the judge is required to charge the jury as to the law applicable to the case. La.C.Cr.P. art. 802. Therefore, we hold that if any evidence of conspiracy has been introduced during trial, the district attorney may refer to, and the court may charge the jury, as to the law of conspiracy. Because we find there was circumstantial evidence of a conspiracy in this case, we hold that the comments during argument and the trial court's charge were proper.
We are not faced with the question of what type of showing of conspiracy must be made before evidence of the type allowed by La.R.S. 15:455 may be admitted. There was no objection in this case to any evidence introduced against Mac Brown on the basis that it was admissible only under that provision. We are concerned here only with reference to the law of conspiracy at the various stages of the trial.
These assignments are without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant argues the testimony of Ralph Sterling's girlfriend that "* * * Ralph Sterling asked to borrow my car * * *" was inadmissible hearsay. This testimony was not inadmissible hearsay. The question, "may I borrow your car?" does not convey information the correctness of which must be tested by crossexamination. The only issue raised by the statement was whether Sterling had in fact made the statement, and this was tested by cross-examination of his girlfriend.
Because the statement objected to is not hearsay, this assignment has no merit.

ASSIGNMENT OF ERROR NO. 6
Another error was assigned by defendant when the trial judge allowed Ralph Sterling's girlfriend to testify about the search of her car, and when he allowed into evidence the gun recovered during that search. Defendant apparently maintains that the absence of Ralph Sterling at trial denied him the right of confrontation on these issues.
Defendant's position is untenable. He had the opportunity to fully cross-examine Sterling's girlfriend on the issue, and we know of no rule of evidence that would require that Sterling be present before such evidence could be presented.
As to receiving the gun in evidence, it is the established law of this State that demonstrative evidence may be introduced if a foundation is laid showing that it is more probable than not that the object is connected with the case. See, e.g., State v. Walker, 296 So.2d 310 (La.1974). We find that sufficient evidence had been introduced to meet this standard before the gun was offered.
These assignment has no merit.

*844 ASSIGNMENT OF ERROR NO. 7
This assignment relates to the incourt identification of defendant by the victim as one of the men who robbed her. The basis for the objection is that the identification was tainted by events surrounding a prior line-up identification in which the victim participated.
During that line-up procedure, the victim picked out the defendant as one of the robbers, but qualified that remark somewhat by saying he appeared to be a little lighter than on the day she was robbed. The officer conducting the line-up then told the victim that she had picked out the right man. At trial, the victim identified defendant once again. Upon being questioned about whether her in-court identification was influenced by the officer's comment, she said she did not believe so.
We find no error in the trial court's ruling that the victim's in-court identification was not tainted by the suggestion of the police officer that she had chosen the right person. Her frank estimation that her incourt identification was not influenced by the events at the line-up coupled with her identification of defendant at the line-up, although it was qualified, convince us that under all the facts defendant was not denied due process. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
This bill lacks merit.

ASSIGNMENT OF ERROR NO. 8
Defendant assigns as error the trial court's ordering him to stand and be observed standing. This procedure was permissible as it constituted demonstrative rather than testimonial evidence, and thus did not violate defendant's right against self-incrimination. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).
This assignment is thus without merit.

ASSIGNMENT OF ERROR NO. 9
This error was assigned when the trial court overruled defendant's objection to a police officer's testimony that he had heard on the police radio the report of the robbery and the description of the car in which the suspects were riding. Defendant contends this testimony was hearsay and thus inadmissible.
Viewing the testimony in the context given, it seems clear that it was admitted to prove why the testifying officer noted the license plate of the car which was eventually stopped. The purpose of introducing the out-of-court statement was not to prove the correctness of the statement (that there were three suspects in a lightcolored car). State v. Bluain, 315 So.2d 749 (La.1975).
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 10
This assignment is based upon the trial court's various rulings that certain questions asked by the assistant district attorney were leading. After reviewing the record, we have determined that none of these questions constituted prejudicial error.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 11
Defendant assigns as error the trial court's refusal to grant defendant's motion for a directed verdict. Having determined the in-court identification was admissible, there was some evidence against defendant which precludes us from reversing the trial court's refusal to grant a directed verdict. State v. Douglas, 278 So.2d 485 (La.1973).
This assignment has no merit.

ASSIGNMENT OF ERROR NO. 13
Defendant objects to what he alleges are personal comments made by the assistant *845 district attorney during his closing arguments. It is contended the comments are similar to those requiring a reversal in State v. Kaufman, 304 So.2d 300 (La.1974). We have examined the record and can find no such statements of personal opinion as would mandate a reversal under Kaufman. The prosecutor did not exceed the permissible scope of argument allowed by La.C.Cr.P. art. 775.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 15
Defendant also complains that the trial court failed to include its requested charge regarding identification testimony in his general charge to the jury. The State argues the requested charge was included in the general charge and thus was properly refused.
We find the thrust of the requested charge was that the State must prove the verity of identification testimony beyond a reasonable doubt. This rule of law was covered in the general charge, which included the instruction that every element of the crime must be proven beyond a reasonable doubt.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 16 and 17
These assignments seek review of the denial by the trial court of defendant's motions for a new trial and for a directed verdict. No new questions are presented by these assignments because the reasons given in support of the two motions are merely reiterations of other assignments previously disposed of herein.
These assignments have no merit.
For the reasons assigned, defendant's conviction and sentence are affirmed.
TATE, J., concurs and assigns reasons.
DIXON, J., dissents. We cannot say that the erroneous instruction on conspiracy did not affect the jury verdict.
CALOGERO, J., dissents and assigns reasons.
TATE, Justice (concurring).
I concur in the affirmance of the conviction. The defendant Brown was convicted on the basis of direct evidence of his participation. No evidence was admitted against him on the basis of some theory of (an unproven) conspiracy, so that testimony of the acts of other (alleged co-conspirators) was not used as proof against him of his guilt. La.R.S. 15:455.
This is the chief distinguishing feature in this case with the same issue raised in the appeal from the conviction of Thomas Carter, as jointly involved in the same robbery, Docket No. 56,594, argued before us during the same argument week. In Carter's case, none of the evidence of the acts of others was admissible against him, in my opinion, since no evidence established his personal involvement in a conspiracy to commit the robbery. (As La.R.S. 15:455 notes: "But to have this effect a prima facie case of conspiracy must have been established.") The mere fact that Carter and another person were riding with the present defendant, Brown, after the robbery does not, by itself, prove their participation in or knowledge of Brown's robbery.
Because of the risk that no prima facie case of conspiracy may be proved, neither the trial court nor the prosecutor should conduct voir dire or instruct jurors inadvance of trial, as to the law of conspiracy when such is not charged. In view of our repeated approval of trial courts' limitations of voir dire to its purpose of establishing the fairness of jurors, I am not inclined to believe that our majority opinion really means to approve voir dire education of prospective jurors as to a finer point of evidence law, which may not even arise during the trial if no prima facie conspiracy is proved.
The true basis here for not reversing for the voir dire and final instructions and argument *846 on conspiracy is that, as to this defendantproved by an eyewitness to have participated in the robbery with some other man (not Carter)a prima facie case of conspiracy was proved. The initial voir dire questioning on conspiracy was, therefore, harmless if erroneous. (However, since declarations or acts of a co-conspirator were not actually offered against the accused, the conspiracy instructions, voir dire examinations, and argument concerned an issue not relevant nor material to the present case.)
With these reservations, I respectfully concur.
CALOGERO, Justice (dissenting).
In assignments of error numbers three, four, twelve and fourteen defendant Mac Brown assigns as error the permeation of his trial with explanations of the law of conspiracy when in fact he was charged with the completed offense of armed robbery, not the inchoate crime of conspiracy to commit armed robbery.[1] During a very short trial, the jury was told four times about the law of conspiracy: by the prosecutor in his opening and closing statements, and by the trial judge during voir dire examination and during his jury charge. The majority opinion holds that the trial judge's decision to allow this trial to be infused with the element of conspiracy was not error. The majority in this case has said:
"Whenever more than one person is charged with the commission of a crime and the State intends to prove that a conspiracy existed in order to take advantage of La.R.S. 15:455, it is proper to discuss on voir dire and during the State's opening statement the law of conspiracy. . . ."
Further on in the opinion they state,
"If any evidence of conspiracy has been introduced during trial, the district attorney may refer to, and the court may charge the jury, as to the law of conspiracy." (Emphasis provided)
They then found circumstantial evidence (some evidence) of a conspiracy and thus found no error in the rulings of the trial court.
On this very date a differently constituted majority has reversed the conviction of Brown's co-defendant, Thomas Carter, on this very issue. State v. Carter, La., 326 So.2d 848. I voted with the majority in Carter, an opinion which sets forth a different standard for deciding whether the trial judge was correct in allowing the conspiracy element into the trial. In Carter we held that evidence of the acts and declarations of co-conspirators is inadmissible until the trial court has determined that a prima facie case that a conspiracy existed to commit the crime has first been shown. Since we found that there was no evidence that Thomas Carter was a member of a conspiracy to commit armed robbery, much less a prima facie showing thereof, we reversed his conviction.
In light of these two conflicting statements as to what standard controls (a prima facie showing of conspiracy, or any evidence of conspiracy) and as to what evidence the state actually presented against these co-defendants and alleged co-perpetrators, I deem it necessary to set out with some specificity my thoughts on these subjects.
As for the law in the area, we look first to the statutes. La.R.S. 15:455 clearly states that to have the effect of binding the defendant with the acts and declarations *847 of a co-conspirator, a "prima facie case of conspiracy must have been established."
La.R.S. 15:455 provides in full that:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
According to the jurisprudence of this state, R.S. 15:455 is a statutory codification of the jurisprudential exception to the hearsay rule allowing the extra-judicial statements of a co-conspirator made pursuant to, or in furtherance of, the conspiratorial purpose to be admissible against another co-conspirator. State v. Ford, 37 La.Ann. 443 (1885); State v. Robichaux, 165 La. 497, 115 So. 728 (1928); and State v. Hodgeson, 305 So.2d 421 (La.1974). This exception to the hearsay rule, which allows the introduction of an incriminating statement made by a co-conspirator not in the presence of the defendant to be used against that defendant, has been held by the United States Supreme Court not to violate the defendant's right to crossexamination secured by the confrontation clause of the sixth amendment in Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). But before the state can utilize the exception embodied in R.S. 15:455, the statute clearly states that "a prima facie case of conspiracy must have been established." It is our opinion in Carter, not this opinion, which applies the standard required by the legislature.
This prima facie evidence standard, higher than the "any evidence" standard used here, is, in my view, that amount of evidence which satisfies a trial judge that enough evidence has been presented so that a jury could reasonably find that defendant was part of a conspiracy to commit the crime. The United States Supreme Court in United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 3104 n. 14, 41 L.E.2d 1039 (1974) recently expressed the standard this way:
"As a preliminary matter, there must be substantial independent evidence of the conspiracy, at least enough to take the question to the jury. United States v. Vaught, 485 F.2d 320, 323 (CA 4 1973); United States v. Hoffa, 349 F.2d 20, 41-42 (CA 6 1965), aff'd on other grounds, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. Santos, 385 F.2d 43, 45 (CA 7 1967), cert. denied, 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1148 (1968); United States v. Morton, 483 F.2d 573, 576 (CA 8 1973); United States v. Spanos, 462 F.2d 1012, 1014 (CA 9 1972); Carbo v. United States, 314 F.2d 718, 737 (CA 9 1963), cert. denied, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964). Whether the standard has been satisfied is a question of admissibility of evidence to be decided by the trial judge"
Previously, the Court had defined independent evidence as evidence other than the acts and declarations of co-conspirators. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).
This substantial, independent evidence may be circumstantial evidence, or direct evidence. Although there is a difficulty inherent in proving an agreement between two people merely by circumstantial evidence, a prima facie case may be established with only circumstantial evidence. But whether direct or circumstantial evidence is presented by the state, the trial judge must be satisfied that he has seen enough proof (to the degree related hereinabove) that defendant was involved in a conspiracy (i.e., that he agreed with someone in advance) to commit the crime, before *848 he submits the question to the jury, certainly before he allows the prosecutor to use conspiracy in his closing argument, before he charges the jury on the law of conspiracy, and before acts and declarations of co-conspirators can be determined chargeable to the defendant and thus admitted into evidence. This is the standard of almost every jurisdiction which allows the extrajudicial statement of an alleged co-conspirator to be admissible in the trial of each conspirator. 46 A.L.R.3d 1148.
Let us turn now to the evidence at this trial that Mac Brown conspired with someone to commit armed robbery. The majority here found that "there was circumstantial evidence of a conspiracy in this case" while the majority in Carter (Carter was Brown's co-defendant, tried jointly with him) found that "there was no evidence of a conspiracy." When I read this record, I find no evidence at all that either Brown or Carter, as between themselves or with anyone else, participated in a conspiracy to commit armed robbery.[2] There was no suggestion that Brown discussed this robbery or any criminal activity with Carter or anyone. There was no suggestion that there had even been any contact between Brown and Carter before, the time this armed robbery occurred, or any contact between them other than their having been together in an automobile some time after the time the charged armed robbery purportedly took place. There was no testimony from anyone that there existed a conspiracy or agreement to commit this crime or any other.[3]
Even had there been some evidence of a conspiracy, as the majority says there was, then the state's argument concerning conspiracy and the judge's charge thereon were still improperly allowed by the trial judge because no prima facie showing had been made to establish such conspiracy. This prima facie showing is mandated by R.S. 15:455 and requires a greater amount of proof than the "any evidence" showing espoused by the majority in this case.
Because I do not find evidence of Brown's participation in a conspiracy, much less a prima facie case thereof, I must respectfully dissent.
NOTES
[1] Although it seems unsual that the element of conspiracy should ever be allowed in a prosecution for a completed offense, a procedural article, R.S. 15:455 which allows the statement or acts of one who is found to be a conspirator to be charged against other conspirators, has long been available to the state in such a prosecution. State v. Chavers, 294 So.2d 489 (La.1974); State v. Cryer, 262 La. 575, 263 So.2d 895 (1972); State v. Melerine, 236 La. 929, 109 So.2d 471 (1959); State v. Smith, 193 La. 706, 192 So. 106 (1939).
[2] Finding Brown involved in a conspiracy and not his co-defendant Carter is not entirely incongruous for there was a third person with whom Brown might have conspired, one Ralph Sterling, a person not tried for whose name in the original information Carter's name was substituted sometime before trial.
[3] In fact, there was no evidence at all against Carter (even as to the charged offense) except that he was in a particular care (which appeared to have been the one used by the robbers) at the time it was returned to its owner, and that he left his sister's house, where he had been living, without previously notifying her. The evidence against Brown was that he helped to borrow that same car, and was in the car when it was returned.

Both Brown and Carter appeared in lineups. At Carter's lineup, the victim positively idenfied another person, not Carter. At Brown's lineup, she chose Brown but stated that he looked "lighter" than the robber. Because a sheriff told her after the lineup that she "had picked the right man out," her identification of the defendant at the trial was probably tainted. And this identification was the sole bit of evidennce on which Brown could have been found guilty.