354 So.2d 1288 (1977)
STATE of Louisiana
v.
Melvin CROCHET.
No. 60135.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied March 3, 1978.
*1289 *1290 Gordon Hackman, Boutte, for defendantappellant.
*1291 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis Dugas, Dist. Atty., John J. Erny, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, Melvin Crochet, was indicted by a Grand Jury for committing aggravated rape, La.R.S. 14:42, on August 5, 1976. He entered a plea of not guilty and not guilty by reason of insanity. Following a six day trial by jury, defendant was found guilty as charged by unanimous vote of the jury. He was sentenced to serve 50 years at hard labor.
On appeal defendant relies upon twentysix assignments of error, which comprise thirteen arguments, for reversal of his conviction and sentence.
On August 5, 1976 the defendant, while armed with a knife, forced the fifteen year old victim and her four year old nephew into the victim's sister-in-law's automobile which was parked at the Sugarland Shopping Center in Lafourche Parish. Defendant drove the car to a cane field behind Central Lafourche High School. Leaving the four year old in the car, the defendant took the victim down a cane row at knife point, made her partially disrobe, and raped her. He then drove her and her nephew back to the shopping center, got into his own automobile, and went to his home in Des Allemands, St. Charles Parish. Later on that same date defendant was arrested and charged with aggravated rape.
ASSIGNMENT OF ERROR NO. 1
Defendant alleges that the trial judge erred in failing to require an appropriate sanity hearing and that he failed to apply the appropriate standards in assessing defendant's capacity to proceed.
Defendant's complaint centers on the fact that neither of the two doctors appointed to examine him were psychiatrists and that their examinations were inadequate and cursory and revealed very little medical information on which the trial judge could base his ruling that defendant was presently able to stand trial.
Both of the doctors who examined the defendant, and who testified at the hearing that defendant had mental capacity to proceed to trial, were general practitioners. Neither had any special training in the field of psychiatry but one of the doctors had been a deputy coroner since 1955 and had been exposed to people with mental disorders in connection with his duties as deputy coroner.
Dr. Musso testified that while he spent about an hour with the defendant he only devoted fifteen minutes inquiring into the defendant's mental capacity. On cross-examination the doctor admitted that he did not give defendant an I.Q. test and that his interview consisted only of general orientation questions, including some relating back to his childhood, and inquiries relating to the use of drugs and alcohol and his past criminal record. Upon questioning by the district attorney, Dr. Musso stated that the defendant appeared well oriented as to time and place, was cooperative, and understood questions asked of him.
Dr. Madden testified that he spent onehalf hour with the defendant. He asked the defendant why he dropped out of school at age fifteen and questioned defendant regarding his understanding of the crime of aggravated rape. Dr. Madden stated that the interview with the defendant was quite "limited." Upon questioning by the district attorney, Dr. Madden stated that while defendant was nervous during the interview, he did answer questions responsively.
The composition of the sanity commission is provided by Louisiana Code of Criminal Procedure Article 644:
"Within seven days after a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The sanity commission shall consist of at least two and not more than three physicians who are licensed to practice medicine in Louisiana, and have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment. No *1292 more than one member of the commission shall be the coroner or any one of his deputies."
There is no requirement in the article that the doctors appointed be psychiatrists. See, State v. Stuart, 344 So.2d 1006 (La.1977). But see, comments under Article 644, "It is contemplated that Louisiana courts will continue their practice of appointing a psychiatrist or psychiatrists when available, as under a similar discretionary provision of amended Article 269 of the 1928 Code of Criminal Procedure."
The refusal to appoint available psychiatrists to a sanity commission would constitute an abuse of discretion, but in the absence of a showing that such a specialist was available for appointment there is no trial error. However, the district court is obliged to review the findings of each physician carefully and to accept his conclusions only if they are reasonable and are founded on an adequate medical examination and other data. In State v. Bennett, 345 So.2d 1129 (La.1977), we set forth some of the appropriate criteria for determining whether an examining physician had conducted a sufficient inquiry into an accused's mental capacity to stand trial. The failure of a physician to consider a substantial number of these criteria indicates a lack of thoroughness or a lack of understanding of the sanity commission's objective. In Bennett, we held that where the record clearly indicates the sanity commissioners failed to consider most of the important criteria for determining competency to stand trial and there was evidence indicating that the defendant was severely mentally retarded the trial judge abused his discretion in not requiring further examination and testing by the physicians. In the instant case the record reflects that the examinations were not as thorough as is desirable, but the evidence does not show that the physicians could not have reasonably reached their conclusions on the basis of their interrogations of defendant regarding his general orientation, childhood, habits and criminal record. The record does not reflect that the doctors disregarded any signs of mental retardation or disorder or that additional mental tests were indicated which they failed to undertake. Accordingly, the instant case is distinguishable from Bennett and we conclude that the trial judge did not abuse his discretion. This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 2
Defendant alleges the trial judge erred in not granting defendant a continuance because his counsel of record had conflicts on the date set for trial and because it was necessary to have defendant examined by a psychiatrist of his own choosing before trial. The record indicates that defense counsel failed to request such a continuance. The period between the October 26th sanity commission hearing and the trial on December 6th provided defendant with an adequate opportunity to arrange for an examination by a doctor of his own choosing.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 3
Defendant alleges that the motion to quash the indictment for aggravated rape should have been sustained because the crime carried a mandatory death penalty. A motion in arrest of judgment was filed and denied on this issue also.
In his brief defendant argues that although State v. Sledge, 340 So.2d 205 (La.1976) [see also State v. Craig, 340 So.2d 191 (La.1976); State v. Morris, 340 So.2d 195 (La.1976)] stands for the proposition that only the penalty provision in the aggravated rape statute was declared unconstitutional, this Court does not have the authority to "legislate" as to penalties. Defendant's contention is without merit because this Court reasoned in those cases that the legislature intended that a defendant be sentenced to the most serious penalty for the next lesser included offense at the time of the commission of the crime.
ASSIGNMENT OF ERROR NO. 4
Defendant alleges that the trial judge should have granted his motion for new trial because the verdict was contrary to the law and evidence because the rape victim failed to resist to the utmost.
*1293 La.R.S. 14:42 defines aggravated rape as follows:
"Aggravated rape is a rape, heterosexual or homosexual, committed where the sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
"(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force;
"(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution;
"(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
"Whoever commits the crime of aggravated rape shall be punished by death."
The evidence indicates that at one point defendant got out of the car in order to walk around to the door on the passenger's side where the victim was seated. Upon cross-examination, she admitted that she possibly could have locked defendant out because he had left the keys in the ignition switch. This was not conclusive evidence of a failure to resist as defendant contends. Due to the exigencies of the situation, it cannot be said that she should have instantly thought of locking all the doors. A locked automobile door would not long deter a strong or persistent assailant. The victim may have been justifiably concerned about the consequences of an unsuccessful escape attempt for her and her nephew in the back seat. The rape itself did not occur at the moment in question, but a few minutes later when the defendant forced the victim, at knifepoint, to walk into the cane fields.
Defendant further argues that there is no evidence that the victim resisted during the rape itself. This is incorrect. The victim testified that she struggled to free herself but did not attempt to kick the defendant in the groin for fear that he would kill her with his knife.
This assignment is without merit.
ASSIGNMENTS OF ERROR NOS. 5, 6, 17-24
Defendant alleges that after he exhausted his twelve peremptory challenges during the voir dire of the jury, the trial judge erred in not dismissing a prospective juror for cause.
The prospective juror's niece was a friend of the rape victim; she had discussed the crime with her mother-in-law who in turn received information from her daughter, a neighbor of the victim's family; she also had potential baby-sitting problems which she said might divert her attention from the case; her husband's first cousin was a deputy sheriff; and she stated she found that voir dire was nerve wracking. Based on the above, defendant urges that the prospective juror could not be impartial because she had preconceived notions about the case and that she was antagonistic towards defense counsel following a vigorous voir dire examination.
However, upon questioning by the court and the district attorney, the prospective juror stated that she could assess the case in light of the evidence brought out at the trial and would carefully listen to the evidence. She did not actually know the victim or her family and the information received from her mother-in-law was third hand. Her husband was not close with his cousin, the deputy sheriff. Also, with regard to her potential baby-sitting problems with her youngest son, she admitted that her husband could make arrangements for his care.
A determination of the competency of jurors is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent arbitrariness. State v. Wilkerson, 326 So.2d 353 (La.1976). In the present case the trial judge did not abuse his discretion in overruling the challenge for cause. The juror's answers on voir dire indicated that she could and would decide the case on its merits and would not be influenced by her prior knowledge.
These assignments do not present reversible error.
*1294 ASSIGNMENTS OF ERROR NOS. 7 and 29
Defendant alleges the trial judge erred in allowing the coroner, Dr. Robichaux, to refer to the apparent virginity of the victim before the rape.
The coroner testified:
"Q. Dr. Robichaux, could you give me a more detailed description of the damage to the vagina of the victim, alleged victim?
"A. This is pretty muchthe sum total of damage was the damage to the hymeneal [sic] ring, those small torn areas of the hymen. That happens in these instances of intercourse with a virginal type of female. There was some little bit of redness around the area of the vagina. This was about the sum total of the damage we are speaking of."
Before Dr. Robichaux took the stand, defense counsel offered to stipulate "* * * that if Robichaux testified he would say that the girl had had sexual intercourse . . ." and moved the court to instruct the doctor to refrain from expressing his opinion that prior to the crime the victim had been a virgin. The trial judge stated that he did not have the authority to limit the doctor's testimony or force the state to enter a stipulation. In this statement he was incorrect but his overruling of the defendant's motions was not incorrect under these circumstances. In State v. Gilmore, 332 So.2d 789 (La.1976), we held that where the State's proof has been rendered unnecessary by defendant's judicial admission, the court may properly find that the prejudicial nature of the evidence outweighs the now diminished or nonexistent legitimate interest of the State in its admission, and require the State to accede to the stipulation in lieu of the evidence. However, in that case we also pointed out that a defendant may not be permitted to rob the State's evidence of its fair and legitimate weight by means of a unilateral stipulation which is cleverly made with grudging limitations or evasions or insinuations, so as to be technically but not practically a waiver of proof. In the instant case we find that the defendant offered to stipulate that sexual intercourse had occurred but he did not offer to stipulate that involuntary or forcible intercourse had occurred. Defense counsel argued that the State could use the victim's testimony to prove force or violence. Thus, the defendant did not make a legitimate offer to waive the requirement that the State prove an involuntary act of sexual intercourse, he merely offered to stipulate that the doctor would testify that sexual intercourse had occurred. Also, the doctor's reference to virginity on direct examination by the State's attorney was so fleeting and oblique that we do not think that its prejudicial nature outweighed the legitimate interest of the State in its admission.
These assignments have no merit.
ASSIGNMENTS OF ERROR NOS. 8 and 14
Defendant alleges that the trial judge erred in failing to suppress evidence taken from his person as a result of his unlawful arrest.
When the defendant brought the victim and her nephew back to the parking lot at the shopping center following the rape, the victim's sister-in-law saw her car being driven into the lot. She had previously thought it had been stolen and had called her husband to pick her up at the shopping center. She saw the defendant get out of her car and she watched him get into another automobile. She was able to write down the license number of the car in which defendant drove away. She gave this piece of paper with the license number on it to her husband who went to State Police Headquarters with it. Deputy Sheriff Wesley Hodges testified that he received a call to report to the headquarters to investigate a rape. When he got there he had a dispatcher run a license check on the number given him by the husband of the victim's sister-in-law. This check revealed that the car was registered in the name of Melvin Crochet who lived in Des Allemands, St. Charles Parish. Deputy Hodges next went and talked to the coroner who confirmed *1295 that the victim had been raped. The deputy talked to the victim who gave a description of her assailant. He also testified that he talked with the sister-in-law who told him she had written down the license number.
Based on the above information, Deputy Hodges procured an arrest warrant from a justice of the peace. He drove to Des Allemands and picked up a St. Charles Parish deputy and they met two other deputies who knew where Crochet resided. They proceeded to Crochet's house and one of the deputies recognized Crochet. The St. Charles Parish officers arrested Crochet and secured the knife from a pat down search of defendant's person. He was booked in the St. Charles Parish jail on a fugitive warrant and then taken to Lafourche Parish where he was booked. The clothes Crochet was wearing were taken from him when he was given prison garb to wear.
The trial judge ruled that under Code of Criminal Procedure Article 202, dealing with arrest warrants, the deputy's affidavit specifying the nature, date and place of offense and the name of the offender and victim, together with the facts presented to the judge, viz., license number and check; interviews with the victim and her sister-inlaw were sufficient to establish probable cause to believe the defendant committed the rape.
The trial judge ruled correctly. The search and seizure of the articles on defendant's person were valid incidents of a valid arrest.
These assignments have no merit.
ASSIGNMENT OF ERROR NO. 9
Defendant alleges that the trial judge erred in requiring defendant to roll up his sleeve during the trial in order to expose a tattoo on his left arm. Defendant argues that this forced him to give evidence against himself in contravention of Article 1, § 13 of the 1974 Louisiana Constitution. Further, because the victim had already positively identified the defendant there was no need to further corroborate her testimony by the showing of the tattoo.
Defendant's argument that he was forced to give evidence against himself is without merit. In State v. Brown, 326 So.2d 839 (La.1976) this Court held that requiring a defendant to stand up at trial was demonstrative rather than testimonial evidence and did not violate the right against self-incrimination. See also, State v. Collins, 328 So.2d 674 (La.1974) (requiring a defendant to open his mouth and reveal teeth was demonstrative evidence); see also, State v. Simms, 341 So.2d 874 (La.1977).
This assignment is without merit.
ASSIGNMENTS OF ERROR NOS. 10 and 15
Defendant alleges that the trial judge erred in failing to grant a new trial on the grounds that the prosecutor repeatedly implied that the defense counsel was purposely delaying the trial.
During the voir dire of the jury the district attorney objected to the long questions asked by defense counsel and objected several times because defense counsel was repeating questions. The trial judge instructed defense counsel to ask shorter questions and to conduct the voir dire on a question/answer basis. The district attorney did make remarks such as the voir dire could take three weeks or it could go on for days. On another occasion, during the trial, the trial judge told defense counsel to clarify a question he was asking in order to expedite the questioning of a witness. Later on, the district attorney objected to the defense counsel's cross-examination of a policeman and said "this is an exercise in the unproductive consumption of time."
Defendant argues that the cumulative effect of all these remarks prejudiced the jury against him. We note, however, that defendant did not move for a mistrial because of prejudicial remarks made by a district attorney. Instead, he moved for a new trial. The provision applicable is Article 851(5) of the Code of Criminal Procedure, which provides that a new trial shall be granted when "[t]he court is of the opinion *1296 that the ends of justice would be served by the granting of a new trial. * * *" Although we do not approve of the prosecuting attorney's tactics of making remarks to the jury instead of addressing objections to the bench, we cannot say that the references to time scattered throughout the nine volumes of the record were prejudicial enough to warrant the granting of a new trial.
These assignments are without merit.
ASSIGNMENT OF ERROR NO. 11
Prior to trial defendant filed a motion requesting the State to produce all exculpatory evidence under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The record reflects that the State complied with the motion and produced several items of exculpatory evidence.
In his motion for new trial the defendant alleged that the prosecution failed to disclose all evidence favorable to him under Brady. The defendant argued that the police investigated the cane field, the scene of the rape. Further, because the victim testified that there was a struggle, evidence of such a struggle should have been found at the scene. Because the State did not put on evidence at the trial regarding the condition of the cane field, the defendant argued that no evidence of a struggle existed and that this evidence of absence of a struggle should have been revealed to him under Brady.
At the hearing on the motion for new trial the district attorney stated that his office did have evidence of a struggle but that this evidence was not used at the trial. He explained that because the trial was lengthy (six days), he chose not to introduce this evidence at the trial because it would only serve to further lengthen the trial and, in his opinion, it was unnecessary to use this evidence to obtain a conviction.
The trial judge denied defendant's motion for a new trial based on this allegation. We find that the trial judge did not abuse his discretion and that this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 12
Defendant alleges that the trial judge erred in failing to grant a new trial on the grounds the jury failed to give full and fair consideration to all the issues involved in the case. Defendant's objection centers around the fact that the jury was out only forty minutes.
This assignment is without merit. This Court has held in the past that shortness of time spent by a jury in deliberation is not a ground for granting a new trial. See, State v. Richmond, 278 So.2d 17 (La.1973).
ASSIGNMENT OF ERROR NO. 13
Defendant contends the trial judge erred in overruling defendant's objection to the introduction into evidence of statements made by the defendant during the commission of the offense on the grounds they were irrelevant and highly prejudicial. The victim testified that the defendant threatened to kill her and her nephew if she would not give him the car keys. The trial judge admitted these statements as part of the res gestae.
Defendant concedes that the threats made against the victim are relevant because threats of great and immediate bodily harm may be an essential element of aggravated rape. He questions the relevancy of threats against the four year old nephew because he was not the rape victim. However, the rape statute does not explicitly require that threats be made against the victim. La.R.S. 14:42(2) provides that aggravated rape is a rape "where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution." The statute is clearly designed not merely to protect against threats upon the victim but also to protect against non-consensual sexual intercourse through destruction of the victim's will to resist. Accordingly, we think it is reasonably within the legislative intent to interpret the statute as prohibiting such rapes through means of threats of great and immediate bodily harm upon a person whom the victim is legally, morally or emotionally obliged to defend.
This assignment is without merit.
*1297 ASSIGNMENTS OF ERROR NOS. 16 and 26
Defendant alleges that the trial judge erred in curtailing defense counsel's questioning of prospective jurors as to reasonable doubt and that he further erred when he implied that reasonable doubt might be 25% of the evidence.
Defendant objects because the trial judge curtailed voir dire as follows:
"Q. I would like to question you now about what you think reasonable doubt means. Reasonable doubt, of course, means something different to one person than it does to another. I would like for you to assume that 100% is total proof a particular evident [sic] and 0% is no proof, and ask you if you can tell me in numbers what on that 100% point scale would be guilt beyond a reasonable doubt.
"BY THE STATE: Objection, Your Honor.
"BY THE COURT: Sustained. That's not a proper question for this. I have never heard the question before. That doesn't make it improper, but there is no scale, percentage scale, that we gauge what is reasonable doubt and what is not, Mr. [defense counsel]. So I am going to sustain the objection."
While parties must be afforded wide latitude in conducting voir dire examinations, Article 786 of the Code of Criminal Procedure vests the trial judge with discretion to regulate the scope of the examination. State v. Williams, 346 So.2d 181 (La.1977). The judge properly curtailed defense counsel's attempt to require the jurors to translate their concept of reasonable doubt into percentages because of the danger that the jurors would be misled into thinking a certain percentage was legally required.
Defendant's argument that the trial judge implied reasonable doubt might be 25% of the evidence is without merit. Defense counsel asked one prospective juror what he would think if the State only proved its case by 51%. The State objected and the Court, in its reasons for not allowing defense counsel to proceed along this line, stated that:
"* * * [T]he jury must have no reasonable doubt when the case is finished with its evidence, regardless of whether it is 51%, 99%, 25% of the evidence. I don't know what it takes to convince an individual juror beyond a reasonable doubt. That is a matter of an individual judgment and you can't put a percentile figure on it. * * *"
Within their context the judge's remarks did not imply that 25% doubt constituted reasonable doubt.
These assignments are without merit.
For the reasons assigned, the conviction and sentence are affirmed.
SANDERS, C. J., and MARCUS, J., concur.